RALPH ABED *v.* COMMISSIONER OF CORRECTION
(14782)

Dupont, C. J., and O'Connell and Hennessy, Js.

Argued March 18—officially released September 17, 1996

*William Emmett Dwyer*, for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (respondent).

O'CONNELL, J. The petitioner appeals from the habeas court's granting of the respondent's motion to quash and the dismissal of his habeas petition, claiming that the habeas court improperly concluded that (1) the prospective denial of good time credits does not deprive the petitioner of a liberty interest in his monthly accrual of good time credits, (2) the denial of statutory good time credits in this case did not constitute an improper prospective denial, and (3) the denial of good time credits was not prohibited by the ex post facto

provisions of the United States and Connecticut constitutions. We affirm the judgment of the trial court.

The following facts and procedural history are pertinent to this appeal. The petitioner is serving a ten year sentence in the respondent's custody. On December 10, 1993, the respondent implemented revised administrative directive 6.14 entitled "Security Risk Groups" to regulate and segregate prison gang member inmates. Directive 6.14 classifies inmates who have been found guilty of certain disciplinary offenses into two categories, one of which is security risk group safety threat members (safety threat). The directive restricts safety threat inmates to close custody units where they are observed at thirty minute intervals and denies them the opportunity to earn statutory good time credits pursuant to General Statutes § 18-7a (c).[1]

On January 24, 1994, the petitioner was designated a safety threat pursuant to directive 6.14 and housed in the close custody unit at the Garner Institution, the community correction center in Newtown. The petitioner filed a pro se petition for a writ of habeas corpus challenging the prospective denial of statutory good time credits. The petitioner later obtained counsel, who filed an amended complaint on his behalf. The respondent filed a motion to quash the amended complaint on the ground that the court lacked subject matter

[1] General Statutes § 18-7a (c) provides: "Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any potion of such reduction by the commissioner or his designee."

jurisdiction to entertain the petition because the petitioner failed to raise a legally cognizable claim. The trial court concluded that it had jurisdiction to adjudicate the petition, and that the petitioner had "a justifiable expectation of earning good time credits based on the plain reading of [General Statutes § 18-7a (c)]." The trial court, however, granted the motion to quash, finding that the respondent provided the petitioner with constitutionally sufficient procedures before precluding him from earning good time credits.

## I

We first address whether the trial court had subject matter jurisdiction to adjudicate the merits of the petitioner's habeas petition. A court has subject matter jurisdiction if it has the authority to hear a particular type of legal controversy. *Vincenzo* v. *Warden*, 26 Conn. App. 132, 137, 599 A.2d 31 (1991). Subject matter jurisdiction for adjudicating habeas petitions is conferred on the Superior Court by General Statutes § 52-466,[2] which gives it the authority to hear those petitions that allege illegal confinement or deprivation of liberty.

The petitioner argues that because he is precluded from earning good time credits as a consequence of his safety threat classification, his term of confinement has been effectively lengthened. In his habeas corpus application, the petitioner alleged that the prospective denial of good time credits will result in his illegal confinement. This allegation is sufficient to invoke the subject matter jurisdiction of the trial court.

## II

A court may entertain only those habeas petitions that address an illegal confinement or deprivation of

---

[2] General Statutes § 52-466 provides in pertinent part: "(a) An application for a writ of habeas corpus shall be made to the superior court or to a judge thereof for the judicial district in which the person whose custody is in question is claimed to be illegally confined or deprived of his liberty . . . ."

liberty. General Statutes § 52-466 (a); *Vincenzo* v. *Warden*, supra, 26 Conn. App. 137. The proper vehicle for attacking the legal sufficiency of a petition for a writ of habeas corpus is a motion to quash. Practice Book § 532; see also *Santiago* v. *Commissioner of Correction*, 39 Conn. App. 674, 678, 667 A.2d 304 (1995). In considering a motion to quash a habeas corpus petition, the allegations made in the petition are deemed admitted and the court does not look to facts outside those alleged in the petition. Id. We must therefore determine whether the petitioner has alleged a liberty interest in good time credits he has not yet earned so as to raise a legally cognizable claim in his petition.[3]

The petitioner argues that, as a result of his custodial classification, he has been prohibited from accumulating good time credits that would automatically accelerate his release date. This argument, however, succeeds only if the awarding of good time in Connecticut is mandatory. We conclude that it is not.

Under the present statutory scheme, good time *may* be awarded in the amount of ten days per month to those inmates who warrant such diminution of sentence *by good conduct and obedience to the rules*. See General Statutes § 18-7a (c). Any act of misconduct or refusal to obey the established rules subjects the inmate to the loss of those credits already earned. General Statutes § 18-7a (c). Our Supreme Court has concluded that § 18-7a (c) is plain and unambiguous. *Nichols* v. *Warren*, 209 Conn. 191, 196, 550 A.2d 309 (1988). According to the plain language of § 18-7a (c), the commissioner *may* award good time credits at his discretion. Thus, because § 18-7a (c) does not require the commissioner to award

---

[3] We recognize that some decisions have referred to a petitioner's failure to raise a cognizable claim as the court's subject matter jurisdiction to hear the case. More accurately, the issue before us is not whether the trial court had subject matter jurisdiction to hear the petition, but whether the petitioner raised a legally cognizable claim.

good time credits, that section cannot create a liberty interest on which the petitioner may predicate habeas corpus relief.

The petitioner, however, contends that § 18-7a (c) gives inmates a right to accrue good time credits automatically and that, because such good time cannot be prospectively forfeited, he has a liberty interest in those good time credits that he has not yet earned. Relying on *Nichols* v. *Warren*, supra, 209 Conn. 196, the petitioner correctly states that *Nichols* prohibits the forfeiture of good time credits that have not yet been earned.

*Nichols*, however, does not control this case. It does not interpret § 18-7a (c) to require that all inmates be given the privilege of earning good time credits. Instead, the *Nichols* holding applies only to those inmates who have become eligible to earn statutory good time credits. In such a case, *Nichols* mandates that those credits must not be denied prospectively. Id., 196–98. *Nichols* does not conclude that § 18-7a (c) compels the automatic award of good time credits, but rather concludes that once an inmate has become eligible to earn statutory credits, such credits cannot be surrendered before they are earned. We therefore conclude that § 18-7a (c) does not give the petitioner a liberty interest in good time credits he has not yet earned.

The petitioner similarly does not have a liberty interest in unearned good time credits because his release date is not specifically predicated on the calculation of those credits as they relate to his existing sentence. "Any of a host of administrative or disciplinary decisions made by prison authorities might somehow affect the timing of a prisoner's release, but such effects have never been held to confer a constitutionally protected liberty interest . . . ." *Luken* v. *Scott*, 71 F.3d 192, 193 (5th Cir. 1995). We conclude that the decision to deny inmates classified as safety threats the opportunity to

earn the good time credits specified in § 18-7a (c) does not rise to the level of a constitutionally protected liberty interest. Id.; see also *Bulger* v. *United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995). In this case, the petitioner's release date is not contingent on his future good time credits. Although the opportunity to earn statutory good time credits may have resulted in accelerating the petitioner's release date, future failure to obey established prison rules may result in a forfeiture of any or all of these credits. Therefore, the possibility that the petitioner's unearned good time credits would affect his ultimate release date "is simply too attenuated" to create a liberty interest. *Luken* v. *Scott*, supra, 193.

Because the petitioner has no liberty interest in unearned statutory good time credits, he has failed to raise a legally cognizable claim upon which relief may be granted.[4]

### III

The petitioner finally claims that directive 6.14 violates the ex post facto clause of article first, § 10, of the United States constitution[5] and also constitutes a violation of the Connecticut constitution. This claim has no merit.

We have long held that "[a]n act *ex post facto* relates to *crimes* only; it is emphatically the making of an innocent action criminal . . . ." (Emphasis in original.) *Bridgeport* v. *Hubbell*, 5 Conn. 237, 240 (1824); see also *Collins* v. *Youngblood*, 497 U.S. 37, 41, 110 S. Ct. 2715,

---

[4] Although the trial court found that § 18-7a (c) confers a liberty interest to the petitioner, it granted the respondent's motion to quash on the grounds that the petitioner had received adequate due process before precluding him from earning good time credits. Thus, because the trial court ultimately reached the correct result, we affirm its decision on alternate grounds. *State* v. *Lynch*, 21 Conn. App. 386, 393, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990).

[5] Article first, § 10, of the United States constitution provides in pertinent part: "No state shall . . . pass any . . . ex post facto Law . . . ."

111 L. Ed. 2d 30 (1990). There is nothing in directive 6.14 that attempts to criminalize an otherwise lawful act. See *DiNapoli* v. *Northeast Regional Parole Commission*, 764 F.2d 143, 146 (2d Cir.), cert. denied, 474 U.S. 1020, 106 S. Ct. 568, 88 L. Ed. 2d 553 (1985) (parole guidelines are not laws within ex post facto prohibition).[6] The ex post facto clause does not prevent prison administrators from adopting and enforcing reasonable regulations that are consistent with prison administration, safety and efficiency. *James* v. *Murray*, 962 F.2d 302, 309 (4th Cir. 1992).

The Connecticut constitution does not contain an ex post facto clause. The petitioner, however, attempts to construct an ex post facto provision by reading article first, §§ 9 and 13, together. Article first, § 9, of the Connecticut constitution provides that no person shall be arrested, detained or punished except in cases clearly warranted by law. Article first, § 13, of the Connecticut constitution provides that "[n]o person shall be attainted of treason or felony, by the legislature." We are not persuaded that these two provisions, when read in conjunction with one another, create an ex post facto prohibition.

Because the petitioner has failed to raise a cognizable claim on which to predicate relief, we conclude that the trial court properly granted the respondent's motion to quash.

The judgment is affirmed.

In this opinion the other judges concurred.

[6] For a contrary view, the petitioner relies on *Geraghty* v. *United States Parole Commission*, 579 F.2d 238, 266 (3d Cir. 1978). The reasoning of *Geraghty*, however, " 'has been expressly or implicitly rejected by every other Circuit Court of Appeals that has assessed the ex post facto effect of the U.S. Parole Commission's guidelines . . . .' " *DiNapoli* v. *Northeast Regional Parole Commission*, 764 F.2d 143, 147 (2d Cir.), cert. denied, 474 U.S. 1020, 106 S. Ct. 568, 88 L. Ed. 2d 55 (1985), quoting *Paschal* v. *Wainwright*, 738 F.2d 1173, 1181 (11th Cir. 1984). Accordingly, we decline to follow *Geraghty's* reasoning.