[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner has filed an amended petition for habeas corpus relief with this court. The respondents are the warden of the Connecticut Department of Correction's Corrigan Correctional Institution and the Connecticut Board of Parole[1] The petitioner alleges that the retroactive application of more stringent statutory parole eligibility requirements violates ex post facto law prohibitions contained in our state and federal constitutions.
 Factual Findings
The following facts, which were proven by a preponderance of the evidence at hearing, are essential to the court's determination of this matter:
On November 10, 1995, the petitioner committed acts for which he was charged with the crimes of assault in the first degree (C.G.S. §53a-59), carrying a pistol without a permit (C.G.S. § 29-35), and reckless endangerment in the first degree (C.G.S. § 53a-63).
The petitioner pled guilty to those offenses on September 24, 1996. On November 12. 1996, he was sentenced to a total effective sentence of 15 years in the custody of the Commissioner of Correction, suspended after ten years to serve, and three years probation. The petitioner has been in custody serving his sentence since that date.
When the petitioner committed the crimes on November 10, 1995, the parole eligibility requirements set forth in C.G.S. § 54-125a mandated CT Page 11859 that inmates serve 50 percent of their sentences before they could become eligible for parole consideration.
Connecticut's General Assembly amended C.G.S. § 54-125a when it passed P.A. 95-255[2] during the 1995 legislative session. The new law mandates that persons convicted of certain violent crimes serve 85 percent of their sentences before becoming parole eligible.
Connecticut's parole laws are discretionary and do not grant inmates the automatic right to demand or receive a parole hearing at any time.
P.A. 95-255 was passed prior to July 1, 1995, and parts of the law became effective on July 1St. However, the portion of the act implementing the so-called 85 percent rule" became effective on July 1, 1996.
The petitioner was notified by the Connecticut Board of Parole that he must serve 85 percent of his sentence before he will be considered for parole.
Mr. Greg Everett, a supervisor with board of parole's hearing division, testified that the new standards were applied to the petitioner's case because he was sentenced after July 1, 1996. Per Mr. Everett, violent offenders sentenced after July 1, 1996, are considered as falling under the new law, while offenders sentenced before July 1, 1996, are treated under the prior law. An inmate's date of sentencing, and not the date of his or her crime, controls this determination. There are more than 800 inmates in Connecticut's correctional system who, like the petitioner, were sentenced after July 1, 1996 for violent offenses committed before that date.
The court found the forgoing testimony to be credible and accepts it as fact.
 Discussion
Article 1, Section 10, Clause 1 of the United States Constitution prohibits the enactment of ex post facto laws.[3]
Connecticut's Constitution does not contain a specific ex post facto prohibition. Abed v. Commissioner of Correction, 43 Conn. App. 176, 183
(1996). The petitioner argues that an ex post facto ban is incorporated in the due process clauses of Article 1, Sections 8 and 9 of the Connecticut Constitution. However, our Appellate Court has stated that: "We are not persuaded that these two provisions, when read in connection with one another, create an ex post facto prohibition." Abed v.CT Page 11860Commissioner of Correction, supra, 183. (See also Michael Robinson v.Warden, CV97-405187S, Superior Court Judicial District of New Haven (DeMayo, J.T.R.), p. 2, January 7, 1999). Accordingly, this court will only consider whether the parole board's actions violate the ex post facto clause of the United States Constitution.
"To fall within the ex post facto prohibition, a law must be retrospective — that is. it must apply to events occurring before its enactment — and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for crime." Lynce v. Mathis, 117 S.Ct. 891, 896, 137 L.Ed.2d 63
(1997). "One function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." (Internal citations omitted.) Garner v. Jones.120 S.Ct. 1362, 1367-1368, 146 L.Ed.2d 236 (2000).
As a threshold matter, this court must determine whether the provisions of P.A. 95-255 are being retroactively applied to the petitioner.
The respondents argue that this is not the case. They maintain that P.A. 95-255 limits the board of parole's discretion to release offenders incarcerated on or after July 1, 1996, who were convicted of a violent offense committed on or after July 1, 1981 (Respondent's Post Trial Brief, p. 8).
The respondents contend that there is no retroactivity because the petitioner pied guilty on September 24, 1996 (more than two months after the law became effective) and was sentenced on November 12, 1996. They also maintain that the petitioner had notice of the General Assembly's intention to change the parole eligibility standards, since the public act was passed on July 1, 1995, more than four months prior to the date when he committed the crimes for which he was subsequently convicted.
As noted above, it is not disputed that the parole board utilized the petitioner's date of sentencing on November 12, 1996, and not the date of his offense, in determining that he fell under the 85 percent rule. Under the board's interpretation of the new act, violent offenders who were sentenced before July 1, 1996, were required to serve 50 percent of their sentences. while those convicted after July 1, 1996, had to serve 85 percent of their sentences, before they became eligible for parole consideration.
"In construing a penal statute, in order to determine whether its application is retrospective, it is the date of the crime which controls. . . . Otherwise, the penal statute is possibly invalid because, it changes, to the defendant's detriment, the law in effect CT Page 11861 at the date of the offense, thereby violating the constitutional prohibition against ex post facto laws.' (Internal quotation marks and internal citations omitted.) State v. Millhouse,3 Conn. App. 497, 501 (1985). See also State v. Paradise,189 Conn. 346 (1983), and In re Daniel H.,237 Conn. 364 (1997).
The new rule determining when the petitioner could be considered for parole became effective more than seven months after the petitioner committed the crimes for which he was convicted. The court finds, therefore, that the application of the provisions of PA. 95-255 to the petitioner was, in fact, retroactive.
Next, the court must determine whether or not the statutory changes to the parole eligibility requirements increases the petitioner's punishment.
"A change in parole policy violates the Ex Post Facto Clause if it creates a sufficient or substantial risk that the class affected by the change will serve longer sentences as a result." (Internal quotation marks and internal citations omitted.) Garner v. Jones, supra. p. 1372.
The test to be applied by a court reviewing an ex post facto claim is whether or not the retroactively applied law creates a sufficient risk of prolonging an inmate's incarceration by changing the substantive formula used to calculate a sentence. Garner v. Jones, supra, p. 1367; CaliforniaDept. of Corrections v. Morales, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995):Weaver v. Graham, 450 U.S. 24 (1981); Miller v. Florida, 482 U.S. 423
(1987). "Speculative and attenuated possibilities of increasing the measure of punishment do not implicate the Ex Post Facto Clause." Lyncev. Mathis, supra, p. 897.
The respondents argue here that the petitioner's sentence has not been increased or aggravated in any manner by the parole board's application of P.A. 95-255. They maintain that because Connecticut's parole statutes are discretionary and do not grant inmates the right to demand or receive a parole hearing, the new public act does not lengthen the petitioner's ten-year sentence. Instead, they contend, the new law merely increases the amount of time before the petitioner will become eligible for parole consideration. This, in the respondents' view, encompasses only the speculative possibility of release.
Conversely, the petitioner urges this court to find that P.A. 95-255 increases the quantum of his punishment. The petitioner argues that under the rule in place at the time he committed his offenses, he would have been required to serve five years of his sentence before being considered CT Page 11862 for parole. Under P.A. 95-255, he must complete eight and one-half years before becoming parole-eligible. Hence, the petitioner claims that the new public act creates a substantial risk of longer incarceration because he must now serve three and one-half years longer before attaining that eligibility threshold.
This court is mindful ". . . that the Ex Post Facto Clause should not be employed for the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures." (Internal quotation marks and internal citations omitted.) Garner v. Jones, supra, p. 1368. "The states must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." Garnerv. Jones, supra, p. 1368.
Although the U.S. Supreme Court has instructed that parole authorities should be given wide discretion, it also has clearly indicated that the ex post facto prohibition may apply in parole cases:
 "The danger that the legislatures might disfavor certain persons after the fact is present even in the parole context, and the court has stated that the Ex Post Facto Clause guards against such abuse." Garner v. Jones, supra, p. 1369.
Also, in the footnote to a decision announced on September 26, 2000, the Connecticut Supreme Court alluded to the fact that the specific ex post facto issues raised here may be brought to the Superior Court under a petition for writ of habeas corpus. Chief Justice McDonald wrote: "We note that the defendant may seek habeas review of the application of the amended parole eligibility requirements to his sentence, thus rendering moot his argument under Pearce." State v. Faria, 254 Conn. 613, p. 627, fn. 16 (2000).
The U.S. Supreme Court has declined to specify a single "formula" for use in determining which laws violate the ex post facto prohibition and which do not. ". . . [W]e have long held that the question of what legislative adjustments will be held to be of sufficient moment to transgress the constitutional prohibition must be a matter of degree." (Internal quotation marks and internal citations omitted.) CaliforniaDept. of Corrections v. Morales, supra, p. 1603.
In Marrero v. Washington, 95 S.Ct. 234, 42 L.Ed.2d 288 (1979), the U.S. Supreme Court held that the retroactive removal of any chance for previously available parole consideration violated the ex post facto clause. CT Page 11863
Similarly, in the 1997 case of Lynce v. Mathis, supra, the Supreme Court also determined that the retroactive alteration of parole or early release requirements could amount to an increase in the duration of an offender's punishment.
The respondents rely heavily on the precedent contained in California Dept. of Corrections v. Morales and Gamer v. Jones, supra, in asserting that P.A. 95-255 does not increase the petitioner's punishment. Both cases dealt with retroactively-applied changes in parole rules which increased the length of time between reconsideration hearings for certain inmates who were initially denied parole.
In Morales, the California legislature enacted a law which decreased the frequency of subsequent parole suitability hearings from annually to every three years for inmates who had twice been convicted of murder.
In Garner v. Jones, the Georgia Board of Parole amended its regulations increasing the interval between reconsideration (from three to eight years) after the initial parole denial of prisoners serving life sentences.
The Supreme Court ruled in both cases that the retroactive changes did not violate the ex post facto prohibition of the U.S. Constitution. The court found in each case that the new rules did not affect inmates' initial parole eligibility dates and applied to only a limited group of individuals (twice-convicted murderers in California, and Georgia prisoners serving life sentences) for whom the possibility of parole was remote. The ruling in Garner v. Jones also noted that inmates could be reconsidered for parole earlier if the board received new information. In both decisions, the Supreme Court indicated that the amended rules created only the "speculative and attenuated possibility" of increasing the measure of punishment and, hence, were not violative of the ex post facto clause.
This court finds that the facts in the instant matter are distinguishable from those in California Dept. of Corrections v. Morales
and Garner v. Jones. Here, the retroactive rule determines when an inmate will initially become eligible for parole consideration, while the forgoing cases dealt with the frequency of reconsideration hearings for inmates initially denied parole. Connecticut's statute is discretionary and does not grant inmates the right to a parole hearing at any time. The California and Georgia regulations set forth specific years when initial and subsequent parole hearings would be held. Finally, the Connecticut law would appear to affect a more expansive group of inmates.
While the court finds significant differences between the facts CT Page 11864 presented here and those in the Morales and Garner v. Jones cases, it concurs that the latter decisions set forth the test which must be applied in determining whether or not modified parole eligibility rules violate the ex post facto clause:
 "When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule. . . . In the case before us, respondent must show that as applied to his own sentence the law created a significant risk of increasing his punishment." Garner v. Jones, supra, 1370.
In measuring the facts of this case by that standard, the court concludes that, as it is being applied to the petitioner, P.A. 95-255 is retroactive and creates the significant risk of increasing his punishment.
The evidence established that under the law in place when petitioner committed the crimes, he would have become eligible for parole consideration after completing 50 percent, or five years, of his sentence. Under the law being retroactively applied to him, he will now serve 85 percent of that sentence, or eight and one-half years, before attaining eligibility. While it is admittedly uncertain whether or not the board would grant the petitioner parole. or even a hearing, it is definite that this determination has been delayed by three and one-half years. The court finds that these facts create at least the "significant risk" that the length of the petitioner's incarceration will be increased.[4]
This court is aware that there is a "split of authority" among the judges of the Connecticut Superior Court on this very issue. (See, for example, Michael Robinson v. Warden, supra, and Mike Boulware. aka v.Warden, (CV98-0576582, Superior Court. Judicial District of Hartford (Corrigan. J.T.R.), February 23, 2000).
This court has also considered the case authority cited in the respondent's thoughtful and comprehensive memorandum of law, including, inter alia, State v. Andrews, 253 Conn. 497 (2000); Beasley v.Commissioner of Correction, 50 Conn. App. 421 (1998), affirmed249 Conn. 499 (1999); Abed v. Commissioner of Correction, supra; andTaylor v. Robinson, 171 Conn. 691 (1976). However, those cases do not CT Page 11865 persuade the court that the petitioner here has failed to establish a valid ex post facto claim.
Under the totality of the facts presented, the court finds that the parole board's application of the provisions of P.A. 95-255 in determining the date on which the petitioner is eligible for parole consideration violates the ex post facto law prohibition enumerated in Article 1, Section 10, Clause 1 of the United States Constitution.[5]
Accordingly. the amended petition for writ of habeas corpus is hereby GRANTED, as set forth below.
Petitioner's counsel has conceded that this court may not order the respondent Connecticut Board of Parole to conduct a parole hearing for the petitioner. Such an order would be illegal because it would confer upon the petitioner a right to which he is not entitled under Connecticut's parole statutes.
This court does, however, order that the Connecticut Board of Parole review the petitioner's eligibility for parole after he completes 50 percent of his sentence, in a manner consistent with the eligibility reviews accorded prior to July 1, 1996 to all other similarly situated inmates.
The court commends counsel for both parties for the highly professional manner in which they advocated their respective clients' interests, and for the instructive and extremely comprehensive memoranda of law which were submitted in this matter.
BY THE COURT:
Dyer, J.