[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
In his petition for a Writ of Habeas Corpus originally filed on October 31, 1997 and amended on July 12 2002, the petitioner, Earl Bates, asserts that he is being denied proper credit for a period of Statutory Good Time (SGT) he earned. For the reasons set forth more fully below, this Court finds the computation of the credit to be correct and the petition shall be denied.
 Findings of Fact
The petitioner was the defendant in a criminal case in the Superior Court for the Judicial District of Fairfield under Docket No. C92-59910 in which he was convicted of violations of C.G.S. §§ 21a-277 (a) and21a-277 (b). He was sentenced to a total effective of three (3) years on March 13, 1991. On the same date and in the same court he was sentenced in Docket No. CR2-58847 to another three (3) year sentence for a violation of C.G.S. § 21a-279 (a) to run concurrent with the first docket. The petitioner was also the defendant in a third criminal case in the Superior Court for the Judicial District of Fairfield under Docket No. CR92-71539 in which he was found to have violated C.G.S. § 53a-59
(a)(1), C.G.S. § 29-35 and C.G.S. § 29-37 (b). On July 31, 1992, he was sentenced to a total effective sentence of nine (9) years. Finally, the petitioner was the defendant in a fourth criminal case in the Superior Court GA-2 under Docket No. CR2-77378 in which he was convicted of various offenses and sentenced to a total effective sentence of two (2) years, nine (9) months to run consecutive to the existing sentence.
During his incarceration, the petitioner was found guilty of numerous disciplinary violations for which he lost SGT credit. These are:
Date of Offense SGT Credit Lost
1. May 14, 1993 90 days CT Page 14589
2. May 26, 1993 90 days
3. July 10, 1993 20 days
4. August 2, 1993 10 days
5. December 24, 1993 40 days
6. December 26, 1996 72 days
7. February 12, 1998 60 days
8. February 18, 1998 90 days
During his incarceration on his first sentence between March 13, 1991 and July 31, 1992, the petitioner earned a total of 166 days SGT credit. He earned an additional 232 days SGT credit between July 31, 1992 and July 31, 1994.
On August 1, 1994, the petitioner was placed in restricted housing and thereafter so long as he remained in this status,[1] in accordance with Directive 6.14, lost the right to earn any SGT credit.
The petitioner was held in the pretrial custody of the respondent in lieu of bond for a total of 24 days under his original sentence, Docket No. CR2-59910. There was no pretrial custody credit for any of his other convictions as he was already a convicted prisoner.
The Department of Corrections has determined that the petitioner's release date is April 6, 2004.
 Discussion of Law
The prime issue in this case is the accrual of Statutory Good Time (SGT) credits, the deduction of days lost due to disciplinary tickets, and the manner in which this affects the release date of the inmate. At the outset, it is important to note what is not at issue in this case. First it is accepted that the petitioner was entitled to earn SGT credits since all of the offenses for which he was sentenced occurred prior to 1994. Second, there has been no challenge to any of the disciplinary tickets that were awarded to the petitioner and the punishments attached thereto. Third, the petitioner is entitled to, and the Respondent does not challenge, the twenty-four (24) days of Jail Credit Good Time (JCGT) that he served while in pretrial confinement awaiting his sentence in the CT Page 14590 first case. Finally, while the petitioner has attempted to argue that he is entitled to have SGT earned while in restricted housing, he has offered no supporting authority for that proposition, other than a generalized "fundamental fairness" argument. On the other hand, the Respondent has asserted that Abed vs. Commissioner, 43 Conn. App. 176
(1996) clearly permits the Commissioner to adopt and apply Directive 6.14. Accordingly, this Court will find Abed, infra. as controlling and rejects that portion of the petitioner's claim.
The key to determining the issue in this case is the interplay between two Supreme Court cases and the manner in which they are to be applied to the petitioner's case. The first of these cases is Nichols vs. Warren,209 Conn. 191 (1988) and the second is Rivera vs. Commissioner ofCorrections, 254 Conn. 214 (2000). The petitioner's case is complicated by the existence of concurrent and consecutive sentences adjudged at divers times.
When the petitioner was sentenced to his initial three-year sentence in March 1991, a release date in March 1994 was established. Each month that the petitioner displayed good behavior was a month that he earned 10 days SGT credit. By the time of his July 31 1992 sentence to a concurrent nine-year term of confinement, the petitioner had accrued a total of 166 days SGT credit. Once he received his new sentence of nine years, that became his controlling sentence and a new release date of July 30, 2001 was established.[2] This had the practical effect of eliminating the 166 days of SGT credit that the petitioner had accrued while serving the first sixteen months of his initial sentence.[3] Thereafter, the petitioner earned an additional 30 days of SGT credit before the imposition of the November 1992 sentence. This additional two years, nine months was to run consecutively to the existing sentence, thereby advancing his release date to March 31, 2004.[4] By May 1, 1993, the petitioner had earned an additional 60 days of SGT credit that reduced his release date to January 31, 2004.
Had the petitioner continued to engage in good behavior, he would have continued to accrue 10 days of SGT credit each month, steadily advancing his release date and hastening his return to society. Unfortunately, on May 14, 1993, the petitioner earned the first of his eight disciplinary tickets. This resulted in his losing ninety (90) days of his accrued SGT credits, the total to which he was entitled according to the Commissioner. Thereafter on May 26, 1993 when the petitioner was found guilty of his second disciplinary offense and suffered a further ninety-day reduction in his SGT credits, he had no balance from which to deduct the sentence. That punishment was not executed, however. CT Page 14591
The major goal behind the creation of SGT credits was not to necessarily reduce a prisoner's sentence, but was designed to encourage good behavior on the part of prisoners. In essence, the "contract" between Corrections and the prisoner was that if the prisoner behaved in accordance with the rules, then the prisoner would thereafter be rewarded with earning SGT credits. These SGT credits were intended to be an incentive for the prisoners to behave. Prior to 1988, if a prisoner with a zero balance of SGT credits misbehaved, then the Commissioner would prospectively take SGT credits as punishment. This clearly provided a disincentive to good prisoner behavior and was declared by Nichols, infra. to violate the legislative purpose of C.G.S. § 18-7a (c).[5]
So, after this, the Commissioner could take the accrued positive balance of SGT credits as punishment for bad behavior, but could not place a prisoner in a negative balance (i.e. "debtor") status. The incentive to the prisoner was that he could immediately begin to once again earn SGT credits if he began to follow the established rules.
As time went on, the petitioner began to accrue SGT credits during those months in which he obeyed the rules. Unfortunately, he had sufficient moments where he got into trouble that he kept losing his accrued SGT credits, almost as fast as he was earning them. The result is that by the time he entered restrictive housing and was unable to earn any more new SGT credits, he had only 72 days SGT credit. He managed to lose these 72 days as a result of a disciplinary ticket dated December 26, 1996 thereby reducing his SGT account to zero and establishing a release date of April 30, 2004.
In 1997, the legislature amended the good time statute, C.G.S. §18-7a to add a provision requiring lost good time to be deducted from good time earned in the future if the prisoner had not yet earned sufficient good time to satisfy the good time lost.[6] See P. A. 97-169, effective date of October 1, 1997. As of October 1, 1997, the petitioner had a zero balance in regards to SGT credit. Subsequent to the effective date of this Public Act, the petitioner accrued two more disciplinary tickets that netted him an additional loss of 150 days SGT credit.[7] As of the end of February 1998, therefore, he had a negative balance of 150 days SGT credit.[8]
In Rivera vs. Commissioner, infra, the Connecticut Supreme Court held that when a prisoner receives a concurrent sentence that extends his date of release, he is entitled to carry his SGT credit forward to the merged sentence. In so doing, the Court expressly reaffirmed its holding inHoward vs. Commissioner of Corrections, 230 Conn. 17 (1994). This meant that the petitioner was entitled to have his previously earned 166 days of SGT credit restored to him. This was accomplished on December 11, CT Page 14592 2000. Notwithstanding, the petitioner still owed the 150 days SGT credit as a result of his previous disciplinary tickets accrued in February 1998. The result of these two events was a positive balance of 16 days SGT credit as of December 11, 2000. This would have adjusted his release date to April 14, 2004. With the pretrial confinement credit of 24 days from his initial sentence his release date should have been moved to March 21, 2004.
The final question that remains is what is to be done with the 90-day loss of SGT credit from the May 26, 1993 disciplinary ticket. The petitioner argues that this punishment is lost because it was incapable of being executed at the time that it was imposed in 1993. The respondent essentially argues that it is in the nature of an unexecuted judgment and now that the petitioner has "assets" (a positive 16 day SGT balance) that it can now be executed. of course, the reason that the May 26, 1993 punishment of a loss of 90 days of SGT credit was not executed was the belief that the petitioner had no positive SGT credit to which it could be applied. Under the reasoning in Howard, infra., the Commissioner was in error in not carrying forward the 166 days SGT credit from the initial sentence.[9] The petitioner really had a 166-day SGT credit earned during his initial period of incarceration. Given that, the May 26, 1993 punishment could have been executed, leaving him a balance of 76 days SGT credit as of May 26. 1993. Assuming all of the other credits and deductions were applied as they had been, the petitioner would now find himself in the position of having a negative SGT credit of 74 days. This would, therefore, advance his release date to April 6, 2004, exactly as determined by the Respondent. While the Court believes that this methodology would be an acceptable resolution of this case, it does leave the petitioner in a worse position for having filed a habeas petition.[10] The better resolution from the petitioner's point of view is to allow the unexecuted 90-day punishment of May 26, 1993 to be used to offset the 16-day SGT credit balance that the petitioner had before the consideration of that punishment. This will reduce the petitioner's SGT credit balance to zero. He does not have any SGT credit to apply to his sentence, nor does he owe any SGT days. Consequently, if the petitioner is returned to a status by which he would be once again be eligible to earn SGT credits, there would be an incentive for his good behavior. As this 90-day loss of good time credit on May 26, 1993 was accrued before the effective date ofP.A. 97-169, it would be inequitable to now use it in such a way as to put the petitioner in a negative SGT credit situation.
Accordingly, the Petition for a Writ of Habeas Corpus is deniedand judgment shall enter in accord with this Memorandum.
CT Page 14593 ___________________ S.T. Fuger, Jr., Judge