[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On May 8, 1997, the petitioner filed a petition for a writ of habeas corpus, which was amended on August 15, 1997. The amended petition alleges that the petitioner's due process rights were violated by the taking of statutory good time (hereinafter "SGT") credits. Specifically, the petitioner claims that the SGT credits were taken illegally without due process of law for the time period of July 6, 1994 through August 29, 1995, when the petitioner claims he was wrongfully classified and held in administrative segregation. In the amended petition, the petitioner seeks to be credited with a total of 167 days: 113 days of SGT and 54 days of jail credit good time (hereinafter "JCGT"), though by the time the petitioner's post-trial brief was filed with the court, the total amount of credit sought by the petitioner was 380 days.
The respondent denies the petitioner's allegations and asserts the following special defenses: 1) that the petitioner waived his due process claims when he pleaded guilty to the disciplinary report for fighting, depriving the habeas court of subject matter jurisdiction and resulting in the petition failing to state a claim upon which relief may be granted; 2) that the respondent fully comported with all due process requirements applicable in this case; 3) that the procedures embodied in Department of Correction Administrative Directives 9.2 and/or 9.5 provide for appropriate due process under the petitioner's circumstances and that any deviations therefrom were harmless; 4) even if the habeas court has subject matter jurisdiction, that there is no relief the habeas court can grant because the respondent did not order the forfeiture of SGT credits as a result of the disciplinary report; 5) that the petitioner's guilty plea to the disciplinary report dated December 6, 1996 constitutes a full and complete waiver of any and all claims related to that disciplinary report; and 6) that there is no liberty interest in being eligible to earn good time and that the decisions to classify an offender to administrative segregation and award good time are left to the discretion of the Commissioner of Correction. Return, at 2-4. CT Page 1753
As to any special defense pleaded by the respondent, it is the respondent who has the burden of proof to show the existence of all facts necessary to prove such special defense. Branch v. Occhionero,239 Conn. 199, 205, 681 A.2d 306 (1996). While the respondent has raised six distinct special defenses, this court will limit itself to addressing the second special defense, which is dispositive of the petition.
Based upon the record before this court, the petitioner's status from July 6, 1994 to December 16, 1994 was that of being held in presentence confinement. Resp't Ex. D, at 1. On December 16, 1994, the petitioner was sentenced to serve fifteen (15) years in the custody of the Commissioner of Correction. Id. The petitioner's timesheet maintained by the respondent shows the following entries posted on December 16, 1994, the date the respondent received the petitioner into custody on a definite sentence: a credit of 1,152 days of jail credit; a credit of 384 days of JCGT; and a forfeiture of 54 days of JCGT due to the petitioner's placement in administrative segregation. Id. The timesheet also shows that the petitioner was credited with 769 days of SGT, though there were also 274 days of SGT not earned by the petitioner. Id.
The evidence in this matter shows that on January 17, 1993, the petitioner was given notice of a classification committee hearing arising out of the petitioner's involvement in a January 16, 1993 attempted escape from Bridgeport Correctional Center, during which a staff member was seriously injured. Resp't Ex. E, at 1 and 2. On January 28, 1993, a special hearing on the petitioner's classification was held due to the seriousness of this incident. Resp't Ex. F, at 1. The petitioner requested and was assigned an advocate to assist him. Id. The classification committee recommended, after executive session, the petitioner's placement in administrative segregation "based . . . on the written documentation provided which indicates [the petitioner] was involved in the serious assault on staff and attempted escape." Id., at 2.
On June 24, 1994, the respondent conducted a second hearing on the petitioner's placement in administrative segregation. Resp't Ex. C, at 2. The evidence shows that the petitioner received notice of the hearing on continued placement in administrative segregation, said notice detailing the reasons for the hearing. Id., at 1. The administrative segregation report shows that the petitioner requested, and was appointed, an advocate to assist him. Id., at 2. The report also shows that the matter was heard by a hearing officer and that the petitioner had the opportunity to request witnesses, but that the petitioner did not avail himself of this opportunity. Id., at 2-3. CT Page 1754
The summary of placement rationale section on the second administrative segregation report states that the petitioner "was an active participant in a serious assault on staff on 01/16/93 at Bridgeport CC. On 01/28/93 the inmate was placed into the A/S [administrative segregation] Unit at Somers CCI. On 03/18/93 [the petitioner] was transferred to Fairfield Hills Hospital due to suffering a nervous breakdown. He was then transferred to Bridgeport C.C. on 06/03/94 and this hearing was scheduled to determine if his placement on A/S Status should continue." Id.
On June 28, 1994, The Inmate Classification Administrator decided to continue the petitioner's placement in administrative segregation. Id., at 4. The rationale for this decision was stated as follows: "A continuation of a previous A.S. placement interrupted by a hospital admission. Decision based on [Administrative Directive] 9.2 [and] the egregiousness of the assault that took place." Id. The continuing placement in administrative segregation on June 28, 1994, prior to the petitioner's sentencing date of December 16, 1994, resulted in the petitioner being not eligible to earn a total of fifty-four days of JCGT for the period from July 6, 1994 to December 16, 1994. Pet'r Ex. 2. The respondent accordingly subtracted fifty-four days of JCGT from the 384 days posted to the petitioner's timesheet for the petitioner's entire pre-sentence confinement period. Id.; Resp't Ex. D.
On December 11, 1996, the petitioner pleaded guilty to a disciplinary report charging the petitioner with fighting. Resp't Ex. A, at 2. As a result of the disciplinary violation, the petitioner was ordered, among other sanctions, to forfeit forty-five (45) days of good time. Id., at 3. The petitioner's timesheet shows that this forfeiture was posted on December 13, 1996. Any possible claim by the petitioner as to these forty-five days has, however, been rendered moot by the respondent's exercise of discretion to restore forty-seven (47) days of SGT to the petitioner's timesheet, which includes the forty-five days forfeited as a result of the fighting offense. Resp't Post-Trial Br., at 4. Consequently, the petitioner's claims in the petition only remain as to the ineligibility to earn JCGT or SGT as a result of being classified in administrative segregation.
"Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. Further, any remedy must be commensurate with the scope of the constitutional violations that have been established." (Internal citations and quotation marks omitted.) Vincenzo v. Warden,26 Conn. 132, 138, 599 A.2d 31 (1991). CT Page 1755
"In order to prevail on a due process claim, [a petitioner] must show that [he has] been deprived of a legally recognized liberty interest, and that [he has] been deprived of liberty without due process of law."Santiago v. Commissioner of Correction, 39 Conn. App. 674, 680,667 A.2d 304 (1995). "The Moody court established the . . . proposition that not every state action that carries adverse consequences for prison inmates automatically implicates or effectuates a due process right. Prison classification and eligibility for various rehabilitation programs, wherein prison officials have full discretion to control those conditions of confinement, do not create a statutory or constitutional entitlement sufficient to invoke due process." Wheway v. Warden,215 Conn. 418, 431, 576 A.2d 494 (1990), citing Moody v. Daggett,429 U.S. 78, 88-89 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976).
In the context of the forfeiture of earned good time credits, the Appellate Court had held that "[d]ue process is satisfied if the prison disciplinary board shows some evidence that supports the revocation of good time credit. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." (Internal citations and quotation marks omitted.) Jolley v. Commissionerof Correction, 60 Conn. App. 560, 561, 760 A.2d 146 (2000).
In Abed v. Commissioner of Correction, 43 Conn. App. 176, 180,682 A.2d 558, cert. denied, 239 Conn. 937, 684 A.2d 707 (1996), the petitioner had claimed that "as a result of his custodial classification, he ha[d] been prohibited from accumulating good time credits that would automatically accelerate his release date." The Appellate Court held that "the decision to deny inmates classified as safety threats the opportunity to earn the good time credits . . . does not rise to the level of a constitutionally protected liberty interest." Abed v. Commissionerof Correction, supra, 43 Conn. App. at 181-82.
"Under the present statutory scheme, good time may be awarded in the amount of ten days per month to those inmates who warrant such diminution of sentence by good conduct and obedience to the rules. See General Statutes § 18-7a (c). Any act of misconduct or refusal to obey the established rules subjects the inmate to the loss of those credits already earned. General Statutes § 18-7a (c). Our Supreme Court has concluded that § 18-7a (c) is plain and unambiguous. According to the plain language of § 18-7a (c), the commissioner may award good time credits at his discretion. Thus, because § 18-7a (c) does not require the commissioner to award good time credits, that section cannot create a CT Page 1756 liberty interest on which the petitioner may predicate habeas corpus relief . . . We therefore conclude that § 18-7a (c) does not give the petitioner a liberty interest in good time credits he has not yet earned.
"The petitioner similarly does not have a liberty interest in unearned good time credits because his release date is not specifically predicated on the calculation of those credits as they relate to his existing sentence. Any of a host of administrative or disciplinary decisions made by prison authorities might somehow affect the timing of a prisoner's release, but such effects have never been held to confer a constitutionally protected liberty interest[.] We conclude that the decision to deny inmates classified as safety threats the opportunity to earn the good time credits specified in § 18-7a (c) does not rise to the level of a constitutionally protected liberty interest. In this case, the petitioner's release date is not contingent on his future good time credits. Although the opportunity to earn statutory good time credits may have resulted in accelerating the petitioner's release date, future failure to obey established prison rules may result in a forfeiture of any or all of these credits. Therefore, the possibility that the petitioner's unearned good time credits would affect his ultimate release date is simply too attenuated to create a liberty interest.
"Because the petitioner has no liberty interest in unearned statutory good time credits, he has failed to raise a legally cognizable claim upon which relief may be granted. (Emphasis in original; internal citations and quotation marks omitted.)" Id., 180-82.
In Beasley v. Commissioner of Correction, 50 Conn. App. 421, 718 A.2d 487
(1998), aff'd., 249 Conn. 499, 733 A.2d 833 (1999), the Appellate Court addressed the inability of an inmate in administrative segregation to earn good time under Administrative Directive 9.4. "[I]t is within the authority of the commissioner [of correction] to promulgate rules that make an inmate ineligible to earn statutory good time." Id., 435. "[O]nce classified in administrative segregation, the [petitioner] became ineligible to earn statutory good time." Id., 433-34.
"Classification in administrative segregation and the loss of eligibility to earn statutory good time are inextricably connected; to lose eligibility to earn good time, an inmate must first be classified in administrative segregation. A proper hearing as to classification necessarily means a proper hearing as to eligibility, as long as the inmate is properly notified of this nexus . . . We have held that the opportunity to earn statutory good time is not a constitutionally protected liberty interest; therefore, only minimal procedural protections CT Page 1757 are necessary to satisfy the notice requirement of due process. Id." (Internal citation omitted.) Id., at 438.
Based upon the foregoing, this court concludes that the respondent has fully complied with the minimal, though applicable, due process requirements. Clearly, there is evidence in the record that supports the conclusions reached by the two hearing committees. The petitioner has failed to meet his burden of proof and make the required showing of a constitutional violation, while the respondent has met his burden of proof as to the second special defense by showing that the due process requirements were comported with. The petition seeking habeas corpus relief is, therefore, denied.
BARRY, J.T.R. CT Page 1758