Davont **PINDLE**, Petitioner,

v.

Adrienne **POTEAT**, Respondent.

No. 00–2693 (RJL).

United States District Court, District of Columbia.

Sept. 30, 2003.

**18**

Jenifer Wicks, Esq., Law Offices of Jenifer Wicks, Washington, Counsel for Petitioner.

Carol Paskin Epstein, Esq., Assistant Corporation Counsel, Washington, Counsel for District of Columbia.

Robert D. Okun, Esq., Chief, Special Proceedings Section, Washington, Counsel for United States.

### MEMORANDUM OPINION

LEON, District Judge.

In this petition for habeas corpus, petitioner challenges as an unconstitutional *ex post facto* law the application to him of United States Parole Commission guidelines that were not in effect at the time he was sentenced. In a Memorandum and Order filed on June 24, 2002, the court ruled that discovery would be appropriate to determine whether under the Parole Commission's guidelines its "discretion . . . is totally or very substantially circumscribed in law or in fact and yields results

materially harsher than those ordinarily occurring under the prior regime." *Blair–Bey v. Quick,* 159 F.3d 591, 592 (D.C.Cir.), *modifying on rehearing* 151 F.3d 1036 (D.C.Cir.1998). In accordance with that opinion, petitioner has filed a motion for leave to conduct discovery. Respondent opposes the motion on several grounds. On review of the record, the memoranda of the parties, and the applicable law, the motion and the petition will be denied.

In 1993, petitioner was convicted in the Superior Court of the District of Columbia of assault and firearms charges and sentenced to an indeterminate term of between 8 years and 4 months to 25 years in prison. At that time, parole decisions for District of Columbia felons were made by the District of Columbia Board of Parole, using its parole guidelines promulgated in 1987. *See* 28 DCMR §§ 200 *et seq.* In August 1998, the authority to make parole decisions concerning District of Columbia felons was transferred to the United States Parole Commission ("Parole Commission"). *See Franklin v. District of Columbia,* 163 F.3d 625, 632 (D.C.Cir.1998). The Commission then developed its own guidelines for making parole decisions for District of Columbia prisoners, which are codified at 28 C.F.R. § 2.80.

Petitioner's first parole hearing was conducted by the Parole Commission in August 2000. Under the Parole Commission's guidelines, petitioner's total point score was 7, which suggested that parole should be denied at the initial hearing. His base point score under these guidelines was also 7, which recommended a parole rehearing date within 18–24 months. In a Notice of Action dated September 23, 2000, the Parole Commission denied parole and scheduled a "rehearing in February 2003, after the service of 24 months from your parole eligibility date of February 19, 2001." *See United States*

*Parole Commission's Opposition to Petition for Writ of Habeas Corpus*, Exhibit 5.[1]

Petitioner alleges, and the Parole Commission concedes, that his score under the 1987 Board of Parole guidelines would have recommended granting parole at his initial hearing. In order to establish that the Parole Commission's discretion is so restricted that petitioner's chance for parole is considerably smaller than had he been considered under the District of Columbia Board of Parole guidelines, petitioner seeks discovery of documents, answers to interrogatories, and depositions of two former Board of Parole members who have worked for the Parole Commission as contract hearing examiners.[2]

In opposing the motion for discovery, respondent submitted a memorandum prepared by the Parole Commission's legal office analyzing all Commission decisions granting or denying parole to District of Columbia felons between October 1, 1999, and June 30, 2000, under the August 1, 1998 revised guidelines. *United States Opposition to Petitioner's Motion for Leave to Conduct Discovery ("Opposition")*, Exhibit A. Of the inmates whose

scores under those guidelines indicated that parole should be granted at the initial hearing, 84 percent were granted parole. The 23 inmates whose parole was denied had incurred disciplinary reports or other factors "that made the inmate a significantly more serious risk than the typical inmate with a point score of 0–2," such as "current mental illness indicating an unusual risk of future violence." *Opposition*, Exhibit A, p. 1. No inmates whose scores indicated that parole should be denied were granted parole, although most were given a rehearing within the guidelines. *Id.* The denials of parole reflect an *upward* departure of 6 percent. Slightly more than half, however, had a score indicating that parole would be granted at the first rehearing (this would not include petitioner Pindle). *Id.*, at 2. The Commission had only conducted 25 rehearings under the August 1998 guidelines. Of these, 19 prisoners had a total point score of 3 and were paroled.[3]

*Discussion*

 The Ex Post Facto Clause of the Constitution prohibits the enactment of any law that "retroactively alter[s] the def-

1. As noted in the 2002 Memorandum and Order, the Commission apparently concluded that no departure from the guidelines was warranted, either as to whether petitioner should be paroled or when he should have a rehearing. Docket Number 14, p. 2 n. 1.

2. Specifically, petitioner seeks discovery of the following documents: (1) his parole file; (2) documents reviewed by commissioners regarding him; (3) policies and training materials regarding revocation hearings [sic—parole hearings]; (4) policies concerning reviews by hearing examiners other than the examiner who conducted the hearing. .

 In interrogatories, petitioner requests information as to: (1) the number of District of Columbia Code offenders whose cases have resulted in "final and binding parole determinations" since August 1998; (2) the number of these cases in which parole was *not* grant-

ed, and whether the decision was below, within, or above the guidelines; (3) the number of these cases in which parole *was* granted, and whether the decision was below, within, or above the guidelines; (4) the reasons for the upward and downward departures; (5) identification of Commission policies regarding application of guidelines for D.C.Code offender cases; (6) the names and titles of employees who worked on petitioner's case; (7) identification of any documents reviewed in his case, including tapes.

 The depositions he seeks are designed to determine whether there are "practical differences in how examiners are trained to apply Commission guidelines" as opposed to former practice under the Board of Parole.

3. This memorandum seems to provide the information sought by petitioner in the first three interrogatories.

inition of crimes or increase[s] the punishment for criminal acts." *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); *see Garner v. Jones,* 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). In *Garner,* the Supreme Court held that the Ex Post Facto Clause is violated when a parole authority adopts a retroactive procedural change that creates " 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.' " *Id.* at 250, 120 S.Ct. 1362, quoting *California Dep't of Corrections v. Morales,* 514 U.S. 499, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). If the inmate shows that application of the new rule will result in a longer period of incarceration than under the previous rule, the Ex Post Facto Clause is implicated. *Id.* at 255, 120 S.Ct. 1362. To determine whether there is in fact a "significant risk of increased punishment," *Id.* at 256, 120 S.Ct. 1362, the reviewing court may consider policy statements and evidence of the actual practice of the parole board. *Id.*

Most courts of appeals addressing the question have held that Parole Commission guidelines, which simply provide guides for the exercise of discretion, cannot be considered "laws" for purpose of the Ex Post Facto Clause of the Constitution. *See Sheary v. United States Parole Comm'n,* 822 F.2d 556, 557 (5th Cir.1987); *Wallace v. Christensen,* 802 F.2d 1539, 1553–54 (9th Cir.1986); *DiNapoli v. Northeast Regional Parole Comm'n,* 764 F.2d 143, 145–47 (2d Cir.1985); *Inglese v. United States Parole Comm'n,* 768 F.2d 932, 936–39 (7th Cir. 1985); *Dufresne v. Baer,* 744 F.2d 1543, 1549–50 (11th Cir.1984); *Ruip v. United States,* 555 F.2d 1331, 1334–36 (6th Cir. 1977). However, the Courts of Appeals for both the District of Columbia Circuit and the Third Circuit have suggested that guidelines that are "administered without sufficient flexibility" might constitute "laws" for Ex Post Facto Clause purposes.

*Blair–Bey,* 151 F.3d at 1049–50; *United States ex rel. Forman v. McCall,* 776 F.2d 1156, 1158 (3d Cir.1985); *see Allston v. Gaines,* 158 F.Supp.2d 76, 82 (D.D.C.2001).

■ The specific issue in this case is whether the Parole Commission's guidelines resulted in an unconstitutional increase in the time in which petitioner is likely to spend in custody under his 1993 sentence. The premise of his request for discovery and his petition is that he would have been paroled if scored under the Board of Parole guidelines, and that the Parole Commission's guidelines caused him to be denied parole.

Petitioner has attached to his petition a copy of the May 1987 guidelines of the Board of Parole, 28 D.C.M.R. §§ 204–204.22. The copy of section 204.19(c) that petitioner provided does, in fact, provide that if the prisoner's point score is 2, "[p]arole shall be granted at initial hearing with highest level of supervision required." However, Section 204.22 also provided that

> [t]he Board may, in unusual circumstances, waive the SFS and the pre and post incarceration factors set forth in this chapter to grant or deny parole to a parole candidate. In that case, the Board shall specify in writing those factors which it used to depart from the strict application of the provisions of this chapter.

Moreover, in 1994, the D.C. Council amended the parole regulations, 28 DCMR § 204.19–204.21, to replace the word "shall" with the word "may" in these regulations that provided that prisoners with a certain point score "shall be granted" parole. Technical Amendments Act of 1994, D.C. Act 10–302, § 52(c)-(f), 41 D.C. Reg. 5193, 5203. *See Ellis v. District of Columbia,* 84 F.3d 1413, 1417 n. 4 (D.C.Cir.1996). And in *Ellis,* the Court of Appeals emphasized the non-mandatory aspects of the

District of Columbia parole laws and regulations, pointing to the "substantial discretion in the Board [of Parole] to grant or deny parole and that the regulations lack the sort of 'mandatory character' needed to support a liberty interest." *Ellis*, 84 F.3d at 1419–20.[4]

Several cases now pending before our Court of Appeals raise the issue of the "precise application of the Constitution's prohibition against *ex post facto* laws to Parole Commission regulations." *See Stokes v. United States Parole Comm'n*, 2002 WL 193336, *2 (D.D.C. February 2, 2002).[5] In any event, because the Board of Parole system merely provided guidelines that could be exceeded in the Board's discretion, and the Commission has provided evidence that there is some flexibility in the application of its guidelines, the Court concludes that petitioner has not demonstrated that he has been deprived of a mandatory right to parole.[6] Accordingly, both the motion for discovery and the petition will be denied.

An appropriate order accompanies this Memorandum Opinion.

---

**4.** As the Parole Commission observes, the issue in *Blair–Bey* was whether the *ex post facto* clause was implicated by the institution of a guideline system when there had been no such structured system in place before. In the instant case, the question simply involves the application of a new and apparently more restrictive set of guidelines.

**5.** *Stokes*, which involves the regulations governing the scheduling of a parole rehearing

date, has been set for argument on December 8, 2003 (U.S.Ct.App. No. 01–5432).

**6.** In a *Supplement to Petition for Writ of Habeas Corpus*, filed on June 6, 2003, petitioner provides a copy of the Notice of Action at his parole rehearing in April of this year. The Commission has ordered that he will *presumptively* be paroled in March 2006, after having served approximately half of his total sentence.