ANDRE M. PIERCE *v.* THERESA C. LANTZ, COMMISSIONER OF CORRECTION
(AC 29411)

McLachlan, Gruendel and Pellegrino, Js.

---

Argued December 5, 2008—officially released March 10, 2009

*Andre M. Pierce*, pro se, the appellant (plaintiff).

*Neil Parille*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Matthew B. Beizer*, assistant attorney general, for the appellee (defendant).

*Opinion*

PELLEGRINO, J. The plaintiff, Andre M. Pierce, an inmate in a state correctional institution, appeals to this court after his administrative appeal, brought in accordance with the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., challenging "regulations" of the department of correction (department) was dismissed in Superior Court. The plaintiff complained in his "petition," filed with the department, that certain department regulations involving censorship of mail, compact discs and cassette tapes, as well as a 30 percent markup on compact discs and cassette tapes sold at the institution's commissary

were not properly promulgated regulations and, therefore, were unenforceable. It is the claim of the defendant commissioner of correction that the censorship restrictions concerning the mail, compact discs and cassette tapes, as well as the commissary markups were directives or rules and not regulations as defined under the UAPA and, therefore, that the plaintiff's claim was properly dismissed by the trial court for lack of subject matter jurisdiction. We agree with the defendant and affirm the judgment of the trial court dismissing the plaintiff's claim.

The court's memorandum of decision recites the following facts and procedural history. The plaintiff, while incarcerated, filed a "declaratory rule petition" with the defendant, pursuant to General Statutes § 4-174. In his petition, he challenged the validity of three department "regulations" because they were not properly promulgated in accordance with the UAPA. The plaintiff claims that he received no response to his petition, so he brought an administrative appeal in the Superior Court pursuant to General Statutes § 4-183 et seq. The defendant moved to dismiss the appeal, arguing that the "regulations" that the plaintiff challenged were in fact directives, not regulations, and, therefore, were not covered by the UAPA. The court agreed with the defendant and granted the motion to dismiss. The court ruled that the defendant is empowered to create directives for the operation of the correctional institution that she administers without having to promulgate regulations under the UAPA. This appeal followed.

On appeal, the plaintiff claims that the court abused its discretion when it dismissed his petition and found that certain prison directives were not "regulations" and, therefore, not required to adhere to the requirements of the UAPA. Specifically, the plaintiff argues

that the prison rules restricting him from receiving publications depicting sexual activity between heterosexual adults and from receiving compact discs and cassette tapes with parental advisory stickers, as well as charging a 30 percent markup on compact disc purchases made at the prison commissary, were regulations and, therefore, should be governed by the UAPA. We disagree.

"The standard of review of a challenge to a court's granting of a motion to dismiss is well established. In an appeal from the granting of a motion to dismiss on the ground of subject matter jurisdiction, this court's review is plenary. A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Bloom* v. *Miklovich*, 111 Conn. App. 323, 335–36, 958 A.2d 1283 (2008).

The UAPA defines the term "regulation" as "each agency statement of general applicability, without regard to its designation, that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term includes the amendment or repeal of a prior regulation, but does not include (A) statements concerning only the internal management of any agency and not affecting private rights or procedures available to the public, (B) declaratory rulings issued pursuant to [General Statutes §] 4-176 or (C) intra-agency or interagency memoranda . . . ." General Statutes § 4-166 (13). "The criteria that determine whether administrative action is a regulation are neither linguistic nor formalistic. It is not conclusive that an agency has, or has not, denominated its action a regulation or that it has, or has not, promulgated it procedurally in the fashion that

would be required of a regulation. . . . The test is, rather, whether a rule has a substantial impact on the rights and obligations of parties who may appear before the agency in the future. . . . Implicit in this formulation is the recognition that a regulation must be a rule of sufficient generality to impinge substantially on others who will deal with the agency at a future time." (Citations omitted; internal quotation marks omitted.) *Maloney* v. *Pac*, 183 Conn. 313, 325–26, 439 A.2d 349 (1981).

The plaintiff argues that because the restrictions on his receiving sexually explicit publications, compact discs and cassette tapes with parental advisory stickers, as well as the 30 percent markup on compact disc purchases at the institution's commissary, have "a substantial impact on the rights and obligations of parties who may appear before the agency in the future"; *Salmon Brook Convalescent Home, Inc.* v. *Commission on Hospitals & Health Care*, 177 Conn. 356, 362, 417 A.2d 358 (1979); the restrictions are regulations. In further support of his argument, the plaintiff cites *Turner* v. *Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), claiming that the United States Supreme Court refers to the censorship of mail as a regulation. He argues, therefore, that because mail censorship is classified as a "regulation" in *Turner*, that automatically makes it a "regulation" in the present matter. The plaintiff's reliance on *Turner*, however, is misplaced.

In *Turner*, the United States Supreme Court was not faced with determining if an administrative directive was a rule or regulation but, rather, it was faced with the issue of determining what level of scrutiny to apply when determining the constitutionality of a regulation. Id., 81. As *Turner* provides no guidance in determining whether an administrative directive is a rule versus a regulation, we reject the plaintiff's reliance on it. "Whether administrative action is a regulation does not depend on the label the agency [or a court] attaches

to it . . . . In deciding whether administrative action amounted to a regulation, a reviewing court must look to what the agency in fact did in a particular case and how it did it." (Citations omitted.) *Eagle Hill Corp.* v. *Commission on Hospitals & Health Care*, 2 Conn. App. 68, 76, 477 A.2d 660 (1984).

In undertaking our plenary review, we start by reviewing the department regulations already promulgated.[1] Section 18-81-1 of the Regulations of Connecticut State Agencies,[2] titled "Commissioner of correction and deputies," provides in relevant part: "The Commissioner is responsible for the administration, coordination and control of the operations of the Department of Correction and for the overall supervision and direction of all institutions, facilities and activities of the Department . . . ." Regs., Conn. State Agencies § 18-81-1 (a). Section 18-81-32 of the Regulations of Connecticut State Agencies, titled "Incoming general correspondence," provides in relevant part: "All incoming general correspondence shall be opened and inspected [and] may be rejected if such review discloses correspondence or material(s) which would reasonably jeopardize legitimate penological interests, including, but not limited to, material(s) which contain or concern . . . (8) Threats to the safety or security of staff, other inmates, or the public, facility order or discipline, or rehabilitation. (9) Sexually explicit material(s) which meet the standards and review procedures set forth in

[1] A court may take judicial notice of state regulations. *Clark* v. *Mulcahy*, 162 Conn. 332, 336 n.3, 294 A.2d 504 (1972) (judicial notice of state police department regulation); see also *Squires* v. *Wolcott*, 133 Conn. 449, 453, 52 A.2d 305 (1947) (judicial notice of state traffic commission regulation); *Roden* v. *Connecticut Co.*, 113 Conn. 408, 415–16, 155 A. 721 (1931) (affirming decision of trial court to take judicial notice of public utilities commission regulation).

[2] Section 18-81-1 et seq. of the Regulations of Connecticut State Agencies, which includes §§ 18-81-1, 18-81-32 and 18-81-39, pertain only to the correctional institutions and department of correction.

Subsection (a) of Section 18-81-39 . . . . (10) Any other general correspondence, rejection of which is reasonably related to a legitimate penological interest. . . ." Regs., Conn. State Agencies § 18-81-32 (a). Section 18-81-39 (a) of the Regulations of Connecticut State Agencies, titled "Procedures for Review of Publications and Sexually Explicit Materials," provides in relevant part: "The Unit Administrator may reject a publication only if it is determined to be detrimental to the security, good order, or discipline of the facility or if it might facilitate criminal activity. . . . Publications which may be rejected by a Unit Administrator include but are not limited to publications which meet one of the following criteria . . . (5) It depicts, describes or encourages activities which may lead to the use of physical violence or group disruption. (6) It encourages or instructs in the commission of criminal activity. (7) It is sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the facility, or facilitates criminal activity. . . ."

The plaintiff argues that the restrictions that prevent his receipt of sexually explicit material and compact discs with parental advisory stickers are regulations that were not properly promulgated and, therefore, are in violation of the UAPA. Our review, however, leads us to conclude that the restrictions are administrative directives, which interpret and apply the regulations that already have been promulgated to govern the department. See Regs., Conn. State Agencies § 18-81-1 et seq. General Statutes § 18-81 empowers the commissioner to create such administrative directives for the administration and operation of the correctional institutions.[3] Administrative directives are created for the

[3] General Statutes § 18-81 provides in relevant part: "The Commissioner of Correction shall administer, coordinate and control the operations of the department and shall be responsible for the overall supervision and direction of all institutions, facilities and activities of the department. The commissioner shall establish rules for the administrative practices . . . of said

internal management of the correctional institutions and are not regulations that are subject to the UAPA requirements. See General Statutes § 4-166 (13) (A).

Moreover, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. . . . The institutional consideration of internal security in the correction facilities themselves is essential to all other correction goals. . . . Because the realities of running a correctional institution are complex and difficult, the courts give wide-ranging deference to the decisions of prison administrators in considering what is necessary and proper to preserve order and discipline." (Citations omitted; internal quotation marks omitted.) *State* v. *Walker*, 35 Conn. App. 431, 435, 646 A.2d 209, cert. denied, 231 Conn. 916, 648 A.2d 159 (1994). Accordingly, pursuant to General Statutes § 18-81 and the regulations, it is within the authority of the commissioner to restrict any materials that may interfere with the order and discipline of the institutions that she governs, and the courts will give deference to the decisions made applying department regulations to specific institutions. *Johnson* v. *Manson*, 196 Conn. 309, 316 n.8, 493 A.2d 846 (1985) ("interpretation placed upon a statute or regulation by the one charged with its administration is entitled to weight in its construction" [internal quotation marks omitted]), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986). Therefore, the restrictions prohibiting the receipt of sexually explicit materials and compact discs with parental advisory stickers are administrative directives, and we conclude that the court properly granted the defendant's motion to dismiss.

institutions and facilities in accordance with recognized correctional standards. . . ."

The plaintiff's argument that the 30 percent markup on compact discs purchased from the commissary is a regulation is also unavailing. In accordance with General Statutes § 18-88 (k), the commissioner has been given statutory authority to establish a commissary.[4] As previously mentioned, General Statutes § 18-81 and the regulations provide the commissioner of correction with the authority to create administrative directives to administer and control the operations of the department. The commissioner has established as a properly promulgated administrative directive that "[m]ost merchandise sold in the commissary shall be marked up 30 percent . . . ."[5] Administrative Directives Department of Correction, c. 3.8 (18) (December, 2005). General Statutes § 18-88 (k)[6] not only anticipates and expects the commissary to generate a profit but also authorizes the commissioner to transfer a portion of the profit to the correctional general welfare fund. The courts, as mentioned, give wide ranging deference to the decisions of the commissioner in establishing guidelines for the order and discipline of the facilities that she governs. See *State* v. *Walker*, supra, 35 Conn. App.

---

[4] General Statutes § 18-88 (k) provides: "The Commissioner of Correction may establish, within the industrial fund, commissaries to be operated for the purpose of sale to inmates of items authorized by the commissioner. The cost of the commissary operation shall be charged to the fund and the proceeds of such sales shall be deposited in the fund. The commissioner is authorized to transfer a portion of the profits from the operation of the commissaries to the Correctional General Welfare Fund established under section 4-57a."

[5] "It is often said that courts take judicial notice of such things as are of common knowledge. These may be matters which come to the knowledge of men generally in the course of the ordinary experience of life, and are therefore in the mind of the trier, or they may be matters which are generally accepted by mankind as true and are capable of ready and unquestionable demonstration." *Roden* v. *Connecticut Co.*, 113 Conn. 408, 415, 155 A. 721 (1931). The administrative directives of the department are easily accessible both in print form and on the Internet, and, accordingly, they are capable of ready and unquestionable demonstration, and we will take judicial notice of them.

[6] See footnote 4.

435. We agree with the court that the directives of which the plaintiff complains were not regulations as defined by the UAPA and that the court did not have subject matter jurisdiction to consider the plaintiff's claim. The court properly granted the defendant's motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.