******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# ALBERTO RIOS *v.* COMMISSIONER
# OF CORRECTION
# (AC 46164)

Alvord, Elgo and Prescott, Js.

*Syllabus*

The petitioner, who had been convicted of several crimes committed in 2013, sought a writ of habeas corpus, claiming that the retroactive application to him of an amended administrative directive of the respondent, the Commissioner of Correction, violated the ex post facto clause of the federal constitution. The petitioner claimed that the amendment's change in the calculation of risk reduction credit he could earn toward completion of his sentence resulted in a longer period of incarceration for him and a postponement of his parole eligibility date to a time later than had originally been projected. Under the statutorily (§ 18-98e) created risk reduction earned credits program, the respondent had the sole discretion to award up to five days of risk reduction credit per month toward the completion of eligible inmates' sentences. Under the administrative directive in effect in 2013, the petitioner had been earning five days of risk reduction credit per month. In 2016, when the respondent amended the 2013 administrative directive to align the award of risk reduction credit with inmates' overall risk classification levels, the petitioner began earning risk reduction credit at a rate of three days per month due to his risk classification. The petitioner filed a motion for summary judgment, claiming, inter alia, that he had earned approximately 104 fewer risk reduction credits from the time that the 2016 administrative directive was applied to him until the time of the habeas proceedings than he would have earned under the 2013 administrative directive. The respondent filed a motion to dismiss the habeas petition, arguing that, pursuant to the applicable rule of practice (§ 23-29 (1)), the court lacked subject matter jurisdiction over the habeas petition and, alternatively, that, pursuant to Practice Book § 23-29 (2), the petitioner had failed to state a claim on which relief could be granted. The habeas court granted the petitioner's motion for summary judgment, reasoning that the 2016 administrative directive was a law within the meaning of the ex post facto clause and that its retroactive application to the petitioner violated the ex post facto clause because it created a sufficient risk of prolonging his incarceration. The court rendered judgment denying the respondent's motion to dismiss and granting the habeas petition, from which the respondent, on the granting of certification, appealed to this court. *Held* that the habeas court improperly granted the petitioner's motion for summary judgment and improperly denied the respondent's motion to dismiss the habeas petition, as the 2016 amended administrative directive did not constitute a law within the meaning of the ex post facto clause, and, thus, the petitioner failed to state a claim on which relief could be granted: whereas the constitutional prohibition on ex post facto laws applies only to penal statutes that disadvantage the offender affected by them, the 2016 administrative directive was not a law but an internal Department of Correction policy that the respondent adopted in his sole discretion, pursuant to § 18-98e (f), to determine the amount of risk reduction credit that inmates may earn according to their overall security risk level, as the adoption of the 2016 administrative directive was an Executive Branch function that was part of the respondent's responsibility to oversee the internal management of the correctional system; moreover, although the petitioner correctly asserted that administrative regulations may implicate the ex post facto clause, the respondent did not adopt the 2016 administrative directive in the exercise of authority delegated to him by the legislature to promulgate rules, which are subject to the notice and comment procedures under the Uniform Administrative Procedure Act (§ 4-166 et seq.), as the 2016 administrative directive was not a regulation subject to legislative approval but was merely a notice regarding how the respondent chose to exercise his unilateral statutory discretion concerning risk reduction credit; furthermore, the petitioner's failure to

demonstrate that the 2016 administrative directive was a law within the meaning of the ex post facto clause meant that his claim was legally insufficient; accordingly, the habeas court improperly failed to grant the respondent's motion to dismiss on the ground that the habeas petition failed to state a claim on which relief could be granted pursuant to Practice Book § 23-29 (2).

Argued November 6, 2023—officially released March 26, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the petition was withdrawn in part; thereafter, the court, *Bhatt, J.*, denied the respondent's motion to dismiss, and granted the petitioner's motion for summary judgment and rendered judgment thereon, from which the respondent, on the granting of certification, appealed to this court. *Reversed; judgment directed.*

*Edward Rowley*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellant (respondent).

*Judie Marshall*, assigned counsel, for the appellee (petitioner).

*Opinion*

PRESCOTT, J. The present appeal concerns the determination of the habeas court that an amended administrative directive of the respondent, the Commissioner of Correction, as applied to the petitioner, Alberto Rios, violated the ex post facto clause of the United States constitution. The amended administrative directive at issue, which the habeas court concluded constituted a law within the meaning of the ex post facto clause, changed the calculation of credits an inmate may earn under the risk reduction earned credits (RREC) program. That program was created by General Statutes § 18-98e,[1] and allows eligible inmates to earn a certain amount of credit per month toward completion of their sentences.

The respondent appeals from the summary judgment rendered by the habeas court granting the petition for a writ of habeas corpus filed by the petitioner. The respondent also appeals from the court's denial of his motion to dismiss, in which he asserted that the habeas court lacked jurisdiction over the petitioner's ex post facto claim and that the petitioner failed to state a claim upon which habeas corpus relief can be granted.

On appeal, the respondent first claims that the court improperly concluded that the amended administrative directive at issue was subject to ex post facto scrutiny because it constitutes a law within the meaning of that clause. The respondent also argues, in the alternative, that, even if the amended administrative directive were subject to scrutiny under the ex post facto clause because it constitutes a law within the meaning of that clause, the court nonetheless improperly concluded that the application of the amended administrative directive to the petitioner violated the ex post facto clause prohibition. We agree with the respondent's first argument and, accordingly, reverse the judgment of the habeas court.

At the outset, we note that "[t]he ex post facto prohibition forbids the Congress and the [s]tates to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." (Footnote omitted; internal quotation marks omitted.) *Weaver* v. *Graham*, 450 U.S. 24, 28, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).

The following undisputed facts and procedural history are relevant to our resolution of the respondent's claims on appeal. The petitioner was convicted, in connection with conduct occurring on April 22, 2013, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), assault in the second degree in violation of General Statutes § 53a-60, and three counts of reckless endangerment in the first degree in violation of General Statutes § 53a-63. On May 15, 2014, he was

sentenced to twenty years of incarceration, suspended after fourteen years, followed by five years of probation.

Pursuant to the RREC program created by § 18-98e, the respondent has the discretion to award RREC to eligible inmates, which credits count toward a completion of their sentences of up to a maximum of five days per month for such things as good behavior, participation in eligible programs and activities, and obedience to institutional rules. The administrative directive of the Department of Correction (department) concerning the earning of RREC that was in effect at the time the petitioner committed the underlying offenses was administrative directive 4.2A (2013 administrative directive). Conn. Dept. of Correction, Administrative Directive 4.2A (effective March 22, 2013). That administrative directive provided that risk reduction credit is "[t]ime awarded at the discretion of the [respondent] or designee at the rate of five (5) days per month for participation in programs or activities, good conduct and obedience to departmental rules, unit and/or program rules in accordance with RREC guidelines as determined by the [respondent] or designee." Administrative Directive 4.2A (3) (D) (effective March 22, 2013).

Pursuant to the 2013 administrative directive, once an incarcerated individual signs an offender accountability plan and adheres to the rules and regulations, RREC is calculated and awarded via the department's computer system at a rate of five days per month. The petitioner earned RREC at the rate of five days per month under the 2013 administrative directive.

On February 1, 2016, the 2013 administrative directive was amended. That amendment, which is reflected in administrative directive 4.2A (2016 administrative directive), provides that "[a]n inmate may earn RREC at the rate of three (3) days per month as an Overall Level 4 inmate, four (4) days per month as an Overall Level 2 or 3 inmate and five (5) days per month as an Overall Level 1 inmate or if the inmate is being supervised in the community on early release supervision throughout the sentenced portion of the inmate's incarceration." Conn. Dept. of Correction, Administrative Directive 4.2A (6) (effective February 1, 2016).

The petitioner had been earning five days of RREC under the 2013 administrative directive. Under the 2016 administrative directive, the petitioner began earning RREC at a rate of three days per month due to his risk classification as an overall level 4 inmate. On February 1, 2018, the petitioner's classification changed to an overall level 3 inmate, thereby allowing him to earn RREC at a rate of four days per month. The petitioner earned approximately forty-six fewer days of RREC than he would have received from March 1, 2016, to February 1, 2018, if the 2013 administrative directive had been applied to him during that time period. From February 1, 2018, until the time of the habeas proceed-

ings, the petitioner earned approximately fifty-eight fewer days of RREC pursuant to the 2016 administrative directive.

Accordingly, by virtue of the application of the 2016 administrative directive to the petitioner, he earned approximately 104 fewer days of RREC from the time the 2016 administrative directive was applied to him until the time of the habeas proceedings than he otherwise would have under the 2013 administrative directive. He will remain ineligible to earn five days of RREC per month, which he had been earning pursuant to the 2013 administrative directive, until and unless he reaches the classification of an overall level 1 inmate.

On December 21, 2020, the petitioner filed a petition for a writ of habeas corpus, alleging that "the retroactive application of this [2016] administrative [directive] violates the prohibition against ex post facto laws contained in the [United States] constitution because it dictates a longer period of incarceration and postpones his parole eligibility date to a date later than was originally projected."[2] The petitioner filed a motion for summary judgment on March 25, 2022, arguing that no genuine issue of material fact existed that the application to him of the 2016 administrative directive violated the ex post facto clause and that he was entitled to judgment as a matter of law.

In response, the respondent filed a motion to dismiss on April 29, 2022, pursuant to Practice Book § 23-29 (1) and (2), arguing that the undisputed facts do not support the petitioner's claim for relief and that, because those undisputed facts demonstrate that the 2016 administrative directive is not a law for purposes of the ex post facto clause, the petitioner failed to state a claim upon which habeas relief can be granted. The respondent also argued that the habeas court lacked subject matter jurisdiction over the petition.

On December 20, 2022, the habeas court issued a memorandum of decision granting the petitioner's motion for summary judgment and denying the respondent's motion to dismiss. The court reasoned that the 2016 administrative directive is a law within the meaning of the ex post facto clause and that the application of the 2016 administrative directive to the petitioner violated the ex post facto clause because it was retroactively applied to the petitioner to create a sufficient risk of prolonging his incarceration. The court determined that no genuine issue of material fact existed and that the petitioner was entitled to judgment as a matter of law. It therefore granted the petitioner's motion for summary judgment and denied the respondent's motion to dismiss. The respondent subsequently filed a petition for certification to appeal, which the habeas court granted. This appeal followed.

Our review of the respondent's claims that the habeas

court improperly granted the petitioner's motion for summary judgment and denied the respondent's motion to dismiss are subject to plenary review. "On review from the granting of a motion for summary judgment, our task is to determine whether the court correctly determined that the moving party was entitled, as a matter of law, to summary judgment on the basis of the absence of any genuine issues of material fact requiring a trial. Because this inquiry requires a legal determination, our review is plenary." *Lawrence* v. *Commissioner of Correction*, 125 Conn. App. 759, 762, 9 A.3d 772 (2010), cert. denied, 300 Conn. 936, 17 A.3d 474 (2011); see also Practice Book § 23-37.

Regarding the court's denial of the respondent's motion to dismiss, Practice Book § 23-29 provides in relevant part that "[t]he judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that: (1) the court lacks jurisdiction; [or] (2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted . . . ." "The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *McMillion* v. *Commissioner of Correction*, 151 Conn. App. 861, 869–70, 97 A.3d 32 (2014).

We turn our attention to the ex post facto question at the center of the motion for summary judgment and the motion to dismiss. Specifically, the respondent argues, among other things, that the habeas court improperly concluded that the 2016 administrative directive constitutes a law within the meaning of the ex post facto clause. We agree.

The following legal principles are relevant to our resolution of the ex post facto claim raised by the respondent. The constitution of the United States provides in article one, § 10, that "[n]o State shall . . . pass any . . . ex post facto Law . . . ."[3] U.S. Const., art. I, § 10, cl. 1. The plain text of this clause clearly states that the prohibition, which is named using the Latin phrase for "after the fact," applies only to laws. "The ex post facto prohibition forbids the Congress and the [s]tates to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed. . . . Through this prohibition, the [f]ramers sought to assure that legislative [a]cts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Weaver* v. *Graham*, supra, 450 U.S. 28–29.

In The Federalist, No. 44, James Madison opined that "ex-post-facto laws . . . are contrary to the first principles of the social compact, and to every principle of sound legislation." The Federalist, No. 44, p. 351 (J. Hamilton ed. 1865). Alexander Hamilton reasoned in The Federalist, No. 84, that prohibitions on ex post facto laws were necessary by arguing that "[t]he creation of crimes after the commission of the fact, or . . . punishment for things which, when they were done, were breaches of no law, and the practice of arbitrary imprisonments, have been, in all ages, the favorite and most formidable instruments of tyranny." The Federalist, No. 84, supra, p. 629.

In the 1798 decision of *Calder* v. *Bull*, 3 U.S. (3 Dall.) 386, 1 L. Ed. 648 (1798), the United States Supreme Court observed that "[t]he prohibition against their making any ex post facto laws was introduced for greater caution, and very probably arose from the knowledge, that the Parliament of Great Britain claimed and exercised a power to pass such laws . . . inflicting . . . punishment." Id., 389. The court described four categories of laws that violate the ex post facto clause: (1) "[e]very *law* that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action"; (2) "[e]very *law* that aggravates a crime, or makes it greater than it was, when committed"; (3) "[e]very *law* that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed"; and (4) "[e]very *law* that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender." (Emphasis added.) Id., 390.

"It is well established that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them." (Internal quotation marks omitted.) *State* v. *Banks*, 321 Conn. 821, 845, 146 A.3d 1 (2016). "[I]n an ex post facto analysis, a court must first determine whether the challenged law is a penal statute . . . ." *Beasley* v. *Commissioner of Correction*, 50 Conn. App. 421, 431, 718 A.2d 487 (1998), aff'd, 249 Conn. 499, 733 A.2d 833 (1999); see also *Abed* v. *Commissioner of Correction*, 43 Conn. App. 176, 182, 682 A.2d 558 ("[w]e have long held that an act ex post facto relates to crimes only; it is emphatically the making of an innocent action criminal" (emphasis omitted; internal quotation marks omitted)), cert. denied, 239 Conn. 937, 684 A.2d 707 (1996).

In determining whether the court in the present case improperly concluded that the 2016 administrative directive constitutes a law within the meaning of the ex post facto clause, we next examine § 18-98e, the statute creating the RREC program and authorizing the

respondent, in his sole discretion, to award RREC up to a maximum of five days per month, and the language of the administrative directive at issue. Section 18-98e (a) provides in relevant part that any person sentenced to a term of imprisonment for eligible crimes "may be eligible to earn risk reduction credit toward a reduction of such person's sentence, in an amount not to exceed five days per month, *at the discretion of the Commissioner of Correction* . . . ."[4] (Emphasis added.) The petitioner does not challenge the application to him of § 18-98e but, rather, challenges the application to him of the 2016 administrative directive, which was issued unilaterally by the respondent pursuant to subsection (f) of § 18-98e. That subsection provides in relevant part that "[t]he commissioner shall adopt policies and procedures to determine the amount of credit an inmate may earn toward a reduction in his or her sentence and to phase in the awarding of retroactive credit . . . ." General Statutes § 18-98e (f). Notably, according to § 18-98e (f), the policies adopted by the respondent reflect the RREC that an "inmate *may* earn"; in other words, RREC is not guaranteed and is awarded at the discretion of the respondent.

The 2016 administrative directive, a copy of which was appended to the petitioner's motion for summary judgment, describes in paragraph 1 the general policy of the RREC program in stating that RREC "may be awarded or rescinded at any time prior to discharge at the discretion of the Commissioner or designee in the interest of public safety." Administrative Directive 4.2A (1) (effective February 1, 2016). Paragraph 4 of the 2016 administrative directive describes the general principles and guidelines underlying the 2016 amendment, stating, "[t]he basic principles of RREC is for the Department of Correction to provide an incentive to inmates and have the ability to earn credit based on an inmate's overall risk level. Inmates who choose to be in compliance and participate in available programs and activities, coupled with good conduct and obedience to departmental, unit and/or program rules shall earn RREC as noted in this directive. Programs shall be offered providing inmates with valuable tools to be better prepared for reintegration into the community. RREC could affect an inmate's discharge date if in compliance. However, refusal to participate in programs or failure to abide by Departmental, Unit and/or Program rules may result in the inmate not earning RREC, forfeiture of RREC and ineligibility to earn RREC. In addition, RREC may be rescinded and/or an inmate may be excluded from earning RREC at any time at the discretion of the Commissioner or designee." Administrative Directive 4.2A (4) (effective February 1, 2016).

Paragraph 6, which is titled "Credit Earned," details the number of days of RREC an inmate may earn per month based on the overall risk classification level of the inmate. Administrative Directive 4.2A (6) (effective

February 1, 2016). The final paragraph, entitled "Exceptions," which provides that "[a]ny exceptions to the procedures in this Administrative Directive shall require the prior written approval of the [respondent]"; Administrative Directive 4.2A (18) (effective February 1, 2016); further demonstrates the amount of discretion that is given to the respondent. The 2016 administrative directive states that it was approved by the respondent who signed the directive.

Also appended to the petitioner's memorandum of law in support of his motion for summary judgment is a notice from the respondent, titled "RREC Notice to Offender Population." The notice states that "[e]ffective February 1, 2016 the earning of Risk Reduction Earned Credit (RREC) will be aligned with an [offender's] overall risk [classification] level. Connecticut General Statute[s] Section 18-98e states that the earning of RREC will be based on an offender's adherence to their offender accountability plan, for participation in eligible programs and activities, and for good conduct and obedience to institutional rules as designated by the [respondent]. RREC shall be earned in the following manner as long as an offender complies with their offender accountability plan and follows all institutional policies and procedures . . . ." The notice then details the amount of maximum RREC that may be earned per month based on an inmate's overall risk level.

It is undisputed that the 2016 administrative directive is an internal policy within the department that was issued and adopted by the respondent in his sole discretion pursuant to § 18-98e (f) to determine the amount of RREC inmates may earn. The 2016 administrative directive is a discretionary internal policy that provides inmates with notice detailing the respondent's current position regarding the rate at which inmates "may earn RREC" according to the inmate's overall security risk level. It is not subject to approval by the legislature, has not been promulgated as a regulation pursuant to General Statutes § 4-168, and it does not grant by its terms any entitlement of inmates to RREC. Nothing in the 2016 administrative directive indicates that the respondent cannot deviate from it.

Our decisions in *Beasley* and *Abed* significantly bear upon the petitioner's ex post facto claim.[5] In *Beasley* v. *Commissioner of Correction*, supra, 50 Conn. App. 421, this court analyzed a claim that an administrative directive promulgated by the respondent, which operated so as to restrict statutory good time eligibility for inmates classified in administrative segregation, violated the ex post facto clause of the United States constitution. This court rejected that claim. See id., 433.

The petitioners in *Beasley* conceded that the decision in *Abed* v. *Commissioner of Correction*, supra, 43 Conn. App. 176, controlled the resolution of the issue and, if applied, would require their argument to fail, but they

argued that *Abed* should be reversed. *Beasley* v. *Commissioner of Correction*, supra, 50 Conn. App. 427. This court concluded that *Abed* remained good law in Connecticut and rejected the petitioners' ex post facto claim. See id.

In so doing, this court reasoned that, "[i]n *Abed* v. *Commissioner of Correction*, supra, 43 Conn. App. 178 . . . the [respondent] had adopted a new directive that authorized a segregated classification for prison gang inmates who were considered a safety threat to other inmates and to prison staff. Once classified in this manner, the inmate became ineligible to earn statutory good time pursuant to the directive. . . . The petitioner in *Abed*, who had been incarcerated prior to the adoption of this directive, challenged the directive on ex post facto grounds. . . . Our Supreme Court has held that an act *ex post facto* relates to *crimes* only; it is, emphatically, the making of an innocent action criminal. . . . There is nothing in [the *Abed*] directive . . . that attempts to criminalize an otherwise lawful act. . . . The ex post facto clause does not prevent prison administrators from adopting and enforcing reasonable regulations that are consistent with prison administration, safety and efficiency." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 427–28.

In concluding that the habeas court properly determined that the directive did not violate the ex post facto clause of the United States constitution, the court in *Beasley* reasoned that, "as in *Abed*, the challenged directive was not a penal statute and cannot be said to be punitive in nature. The habeas court found, and we agree, that the purpose for the rule precluding inmates from being eligible to earn statutory good time while classified in administrative segregation was not to punish but to aid in controlling the inmate population. Pursuant to the commissioner's authority, such administrative rules are explicitly permitted." Id., 432.

Federal courts, and in particular the United States Court of Appeals for the Second Circuit, that have considered similar ex post facto claims also have made clear that administrative directives that are not subject to legislative approval are not classified as laws for purposes of the ex post facto clause. See *U.S. Bank, National Assn.* v. *Mamudi*, 197 Conn. App. 31, 42, 231 A.3d 297 (in general, we look to federal courts for guidance in resolving issues of federal law), cert. denied, 335 Conn. 921, 231 A.3d 1169 (2020). In *Connelly* v. *Lantz*, 366 Fed. Appx. 194 (2d Cir.), cert. denied, 562 U.S. 950, 131 S. Ct. 126, 178 L. Ed. 2d 247 (2010), the Second Circuit rejected an inmate's claim that the application to him of an administrative directive of the respondent concerning community release violated the ex post facto clause by succinctly reasoning both that he did not raise the issue in his complaint and that, "in any event, the ex post facto clause does not apply to the

[d]epartment's guidelines or administrative directives." Id., 195.

Similarly, in *Barna* v. *Travis*, 239 F.3d 169 (2d Cir. 2001), in determining that there was no merit to a claim that a change in New York's parole procedures violated the ex post facto clause, the Second Circuit reasoned that the ex post facto clause "does not apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion. . . . Such guidelines are not laws within the meaning of the ex post facto clause." (Citation omitted; internal quotation marks omitted.) Id., 171; see also *DiNapoli* v. *Northeast Regional Parole Commission*, 764 F.2d 143, 145–46 (2d Cir.) (federal parole guidelines, promulgated to assist parole commission in its exercise of discretion and under which commission remained free to recommend parole date above or below guidelines while retaining discretion to revise or modify guidelines at any time, did not constitute laws within meaning of ex post facto clause), cert. denied, 474 U.S. 1020, 106 S. Ct. 568, 88 L. Ed. 2d 553 (1985); see also *Warren* v. *Baskerville*, 233 F.3d 204, 207 (4th Cir. 2000) ("change in an administrative policy that was in effect at the time of [the underlying] offenses does not run afoul of the prohibition against ex post facto laws"), cert. denied, 534 U.S. 831, 122 S. Ct. 76, 151 L. Ed. 2d 41 (2001); *Pindle* v. *Poteat*, 360 F. Supp. 2d 17, 20 (D.D.C. 2003) ("[m]ost courts of appeals addressing the question have held that [p]arole [c]ommission guidelines, which simply provide guides for the exercise of discretion, cannot be considered laws for [the] purpose of the [e]x [p]ost [f]acto [c]lause of the Constitution" (internal quotation marks omitted)).

The petitioner argues that "actions of administrative agencies are not exempt from ex post facto scrutiny." He cites *Ross* v. *Oregon*, 227 U.S. 150, 33 S. Ct. 220, 57 L. Ed. 458 (1913), for the principle that the ex post facto clause is a restraint upon legislative power and has with uniformity been regarded "as reaching every form in which the legislative power of a [s]tate is exerted, whether it be a constitution, a constitutional amendment, an enactment of the legislature, a by-law or ordinance of a municipal corporation, or a regulation or order of some other instrumentality of the [s]tate exercising delegated legislative authority." Id., 162–63. The Supreme Court in *Ross* determined that article one, § 10, of the federal constitution[6] does not apply to judicial decisions because the ex post facto clause, "according to the natural import of its terms, is a restraint upon legislative power and concerns the making of laws, not their construction by the courts"; id., 161; and that "the ruling here in question was by an instrumentality of the [s]tate, but as its purpose was, not to prescribe a new law for the future . . . it is quite plain that the ruling was a judicial act and not an exercise of legislative authority." Id., 163.

*Ross* does not bear the weight placed on it by the petitioner because it involved a challenge to a judicial decision rather than a legislative enactment. The court in *Ross* was not asked to decide, nor did it decide, whether an administrative directive that is not subject to legislative approval constitutes an ex post facto law. Additionally, the broad principle in *Ross* regarding the applicability of the ex post facto clause to various forms of delegated legislative authority does not alter our conclusion.

The description set forth by our Supreme Court in *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 950 A.2d 1220 (2008), of the separation of powers within our criminal justice system is helpful to consider. In *Washington*, our Supreme Court explained that, "[w]ith respect to our criminal justice system, we have recognized that there are duties and responsibilities that are dedicated to each of our three branches of government. We have acknowledged the legislature's authority to define crimes and the appropriate penalties for them. . . . We have recognized that the judicial branch is charged with the responsibility of adjudicating criminal charges and ultimately determining the sentence of incarceration, if any, to be imposed. . . . Finally, we have recognized the executive branch's responsibility of managing our correctional institutions, parole system and the administration of prisoners' sentences, including transfers among facilities and the application of sentence credits." (Citations omitted.) Id., 828. This description, coupled with the designation in § 18-98e (f) to the respondent of the discretionary authority to unilaterally adopt policies regarding RREC, which policies are not subject to approval by the legislature, demonstrate that the respondent's adoption of the 2016 administrative directive is an executive branch function taken as part of his responsibility to oversee the correctional system.

Neither the petitioner nor the habeas court cited any law on point, nor are we aware of any, establishing that the 2016 administrative directive has the force or effect of law because it involves an instrumentality of the state exercising delegated legislative authority. Rather, in support of his argument that the 2016 administrative directive constitutes a law within the meaning of the ex post facto clause, the petitioner cites cases wherein courts have held that certain rules made by agencies pursuant to the federal Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq., and therefore subject to legislative approval, implicate the ex post facto clause.

For example, he cites the decision of the United States Court of Appeals for the Seventh Circuit in *Rodriguez* v. *United States Parole Commission*, 594 F.2d 170 (7th Cir. 1979), which concerned whether the ex post facto clause was violated by the retroactive application to a federal prisoner sentenced under 18 U.S.C. § 4205

(b) (2) of an administrative regulation of the parole commission that denied him any meaningful consideration for parole. Id. In determining that the ex post facto clause was applicable to the administrative regulation at issue, the court reasoned: "The first part of this inquiry, whether the regulation involved here is equivalent to a statute for purposes of the [ex post facto] clause, need not detain us long. When Congress has delegated to an agency the authority to make a rule instead of making the rule itself, the resulting administrative rule is an extension of the statute for purposes of the clause. What Congress cannot do directly, it cannot do by delegation. . . . The [Parole Commission and Reorganization] Act expressly authorizes the commission to adopt rules and regulations as are necessary to carry out a national parole policy. 18 U.S.C. § 4203 (a) (1). Legislative rules adopted by the commission pursuant to statutory power have the force and effect of law." (Citations omitted; internal quotation marks omitted.) *Rodriguez* v. *United States Parole Commission*, supra, 173.

That regulations adopted by an agency pursuant to the rule-making authority delegated to it by Congress may constitute a law for purposes of the ex post facto clause is not dispositive in the present case, as the 2016 administrative directive is not a regulation subject to the requirements of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., which requires legislative approval before having the force and effect of law.[7] Rather, the 2016 administrative directive was created for the internal management of correctional institutions and to provide inmates with notice as to the respondent's current policy on how he chooses to exercise his statutory discretion to award RREC of up to five days per month.

Although the 2016 administrative directive is not an administrative regulation subject to legislative approval, the petitioner cites multiple cases involving the applicability of the ex post facto clause to such administrative regulations. For example, he argues that "[i]t does not matter that it was an administrative directive, rather than a statutory amendment, because case law establishes that administrative rules are not exempt from [the] ex post facto clause protections." He contends that *Garner* v. *Jones*, 529 U.S. 244, 120 S. Ct. 1362, 146 L. Ed. 2d 236 (2000), "makes explicitly clear that administrative directives can be subject to ex post facto protections." A careful reading of *Garner* undermines the petitioner's reliance on it.

The inmate in *Garner*, following his escape from prison while serving a life sentence for murder, committed another murder and thereafter was sentenced to a second life term. Id., 247. He challenged on ex post facto grounds the retroactive application to him of an amendment to rule 475-3-.05 (2), which had been adopted by Georgia's State Board of Pardons and

Paroles in the exercise of its statutorily delegated authority to determine the interval at which inmates serving life sentences would be reconsidered for parole and which lengthened the time interval between proceedings to reconsider an inmate's eligibility for parole after an initial consideration had taken place following an inmate's having served seven years of incarceration. Id., 246–49. The United States Supreme Court reversed the judgment of the United States Court of Appeals for the Eleventh Circuit, which held that the retroactive application of the change in the law was necessarily an ex post facto violation, and remanded the case for consideration of the relevant question of "whether the amended Georgia [r]ule creates a significant risk of prolonging [the inmate's] incarceration." Id., 251.

Importantly, *Garner* does not state whether the rule at issue in that case was subject to approval by the Georgia legislature. As the habeas court in the present case recognized in its decision, *Garner* contains "no mention, let alone any discussion, of whether the ex post facto clause is *inapplicable* to administrative regulations." (Emphasis in original.) We note that *Garner*'s holding that, under certain circumstances, rules adopted by a state's Board of Pardons and Paroles can implicate the ex post facto clause, does not inform our analysis of whether, in the present case, the unilaterally adopted, discretionary administrative directive of the respondent implicates the ex post facto clause.

We also are not persuaded by the habeas court's reliance on *Secretary, Dept. of Public Safety & Correctional Services* v. *Demby*, 390 Md. 580, 890 A.2d 310 (2006), to support its conclusion that the 2016 administrative directive constitutes a law within the meaning of the ex post facto clause. *Demby* concerned a challenge on ex post facto grounds by several inmates who previously had been eligible for special project credits for "double celling," or, in other words, sharing a cell with another prisoner, but were later precluded from obtaining such credits pursuant to an amendment to a regulation. Id., 584–90. In concluding that the ex post facto clause was applicable to the amendment, the court in *Demby* noted that "[t]he amendment in question here is clearly a regulation pursuant to the definition of regulation in the [Maryland] Administrative Procedure Act"; id., 606; and reasoned that, because the regulation was not merely interpretive in nature but, rather, was substantive, it had "the force of law," which "is evident in the fact that the adoption of the amendments immediately prohibits various categories of inmates from receiving special housing credits for double celling." (Internal quotation marks omitted.) Id., 608.

*Demby*, however, is inapposite because it concerns a regulation adopted pursuant to Maryland's Administrative Procedure Act, and, as noted in *Demby*, "under the Maryland APA, an agency's organizational rules,

procedural rules, interpretive rules and statements of policy all must go through the same procedures as required for legislative rules." (Emphasis omitted; internal quotation marks omitted.) Id., 607 n.13. The administrative directive challenged in the present appeal is not subject to such approval procedures.

The petitioner also contends that "[w]hether an agency regulation can be deemed legislative in nature depends on whether the regulation imposes a substantive rule, rather than merely providing interpretive guidance." He cites the decision of the United States Court of Appeals for the Tenth Circuit in *Smith* v. *Scott*, 223 F.3d 1191 (10th Cir. 2000), for the principle that "an agency regulation which is legislative in nature is encompassed by [the ex post facto clause] because a legislative body cannot escape the [c]onstitutional constraints on its power by delegating its lawmaking function to an agency." (Internal quotation marks omitted.) Id., 1193–94. The petitioner further contends, citing *Prater* v. *United States Parole Commission*, 802 F.2d 948 (7th Cir. 1986), that the constitutional prohibition against ex post facto laws "applies to statutory changes and also (we may assume) to changes in administrative regulations that represent an exercise of delegated legislative authority . . . ." Id., 953–54.

The petitioner's argument is consistent with the reasoning of the habeas court wherein it determined, citing *United States* v. *Ellen*, 961 F.2d 462 (4th Cir.), cert. denied, 506 U.S. 875, 113 S. Ct. 217, 121 L. Ed. 2d 155 (1992), that the answer to the question of "under what circumstances is an administrative directive subject to the ex post facto clause" is dependent "on whether it is a substantive or legislative rule as opposed to an interpretive guide." In *Ellen*, the United States Court of Appeals for the Fourth Circuit noted that, "[w]hen Congress has delegated to an agency the authority to make a rule instead of making the rule itself, the resulting administrative rule is an extension of the statute for purposes of the [ex post facto clause]. . . . The reason for applying the [c]lause to such legislative rules is straightforward: Congress should not be allowed to do indirectly what it is forbidden to do directly. . . . But when an agency promulgates an interpretive rule, the [e]x [p]ost [f]acto [c]lause is inapplicable. [I]nterpretive rules simply state what the administrative agency thinks the statute means, and only remind affected parties of existing duties. . . . Unlike legislative rules, which ha[ve] the force of law . . . interpretive rules are statements of enforcement policy. They are . . . merely guides, and not laws: guides may be discarded where circumstances require; laws may not." (Citations omitted; internal quotation marks omitted.) Id., 465.

In concluding that the manual at issue was not a law within the meaning of the ex post facto clause, the Fourth Circuit reasoned that it did not "purport to [create new]

law or [impose new] rights or duties . . . and it was not promulgated through the notice and comment rulemaking procedures of the Administrative Procedure Act, 5 U.S.C. § 551 et seq., through which all legislative rules must pass." (Citation omitted; internal quotation marks omitted.) Id., 466. Employing similar reasoning, the Seventh Circuit in *Prater* explained that "[t]he rule against ex post facto laws applies to statutory changes and also (we may assume) to changes in administrative regulations that represent an exercise of delegated legislative authority, as opposed to an interpretation of legislation by an agency authorized to execute, not make, laws. . . . The legislature should not be allowed to do indirectly what it is forbidden to do directly. Thus if Congress authorizes an agency to make rules governing procedure before the agency . . . and the agency does so, the rules are as if made by Congress; Congress could have made them, if it had had time. But if the Justice Department issues guidelines for the enforcement of a federal statute that it administers . . . this is the performance of an interpretive function that every law enforcement agency has; it is not the enactment of a law. . . . If the law is unchanged and no legislative regulations are promulgated, a mere change in enforcement methods, priorities, or policies, written or unwritten—a change within the scope of the executive branch's discretion in enforcing the laws passed by Congress—does not activate the prohibition against ex post facto laws." (Citations omitted.) *Prater* v. *United States Parole Commission*, supra, 802 F.2d 953–54.

The Seventh Circuit in *Prater* reasoned that the guidelines at issue in that case "are interpretive rather than legislative. They are not the exercise of delegated authority (e.g., to make rules of procedure); they are statements of enforcement policy. They are . . . merely guides, and not laws: guides may be discarded where circumstances require; laws may not." (Internal quotation marks omitted.) Id., 954.

The decision in *Prater*, which we are not obligated to follow, is inconsistent with precedent in other circuit courts of appeals including that of the Second Circuit. Even if we assume, arguendo, that the rubric underlying *Ellen* and *Prater* is applicable in the present case, the result would not change. The 2016 administrative directive was not adopted by the respondent in the exercise of authority delegated to him by the legislature to promulgate rules subject to the notice and comment procedures under the UAPA. It is not a regulation subject to legislative approval; rather, it is merely a notice regarding how the respondent chooses to exercise his unilateral discretion to award RREC, if at all.

For the foregoing reasons, we determine that the court improperly determined that the 2016 administrative directive fell within the ambit of the ex post facto

clause. On the basis of this legal determination, we conclude that the petitioner was not entitled to judgment as a matter of law, and, thus, the court improperly granted the motion for summary judgment.

We now turn to the respondent's claim that the court improperly denied the motion to dismiss. The respondent sought dismissal of the habeas petition on two grounds: that the habeas court lacked subject matter jurisdiction over the petition; see Practice Book § 23-29 (1); and that the petitioner failed to state a claim upon which habeas relief could be granted. See Practice Book § 23-29 (2). In denying the motion to dismiss, the court stated that "[t]his court has jurisdiction . . . ." The court, however, in denying the motion to dismiss, also implicitly rejected the alternative ground on which the respondent sought dismissal: the failure of the petition to state a claim upon which habeas corpus relief could be granted.

We agree with the respondent that the court improperly denied the motion to dismiss. The question arises, however, as to whether the court properly should have granted the motion to dismiss on the basis of subsection (1) or (2) of Practice Book § 23-29. In adjudicating this issue, we recognize that we have not always spoken consistently concerning the subtle distinctions between a habeas court's lack of subject matter jurisdiction and the failure of a habeas petition to state a claim upon which relief can be granted.

As explained by our Supreme Court in *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 239 A.3d 272 (2020), "[s]ubject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." (Internal quotation marks omitted.) Id., 463.

Although it is true that we have referred to a habeas court as having a "limited" jurisdiction, the principles articulated in *Wolfork* should apply with equal force in habeas proceedings. "With respect to the habeas court's jurisdiction, [t]he scope of relief available through a petition for habeas corpus is limited. In order to invoke the trial court's subject matter jurisdiction in a habeas action, a petitioner must allege that he is illegally confined or has been deprived of his liberty. . . . In other words, a petitioner must allege an interest sufficient to give rise to habeas relief. . . . In order to . . . qualify as a constitutionally protected liberty [interest] . . . the interest must be one that is assured either by statute, judicial decree, or regulation." (Citations omitted; internal quotation marks omitted.) *Green* v. *Commissioner*

*of Correction*, 184 Conn. App. 76, 85, 194 A.3d 857, cert. denied, 330 Conn. 933, 195 A.3d 383 (2018).

"[T]he presence or absence of an affirmative, enforceable right is not relevant [however] . . . to the ex post facto prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished has occurred. Critical to relief under the [e]x [p]ost [f]acto [c]lause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. . . . [T]he primary focus of an ex post facto claim is the probability of increased punishment. To establish a cognizable claim under the ex post facto clause, therefore, a habeas petitioner need only make a colorable showing that the new law creates a genuine risk that he or she will be incarcerated longer under that new law than under the old law." (Citations omitted; internal quotation marks omitted.) *Perez* v. *Commissioner of Correction*, 326 Conn. 357, 375, 163 A.3d 597 (2017).

Our jurisprudence has, at times, conflated the concepts of a lack of subject matter jurisdiction and the failure to state a claim upon which relief can be granted. Our Supreme Court, however, held in *In re Jose B.*, 303 Conn. 569, 34 A.3d 975 (2012), that "the failure to allege an essential fact under a particular statute goes to the legal sufficiency of the complaint, not to the subject matter jurisdiction of the trial court." Id., 579. The court in *In re Jose B.* reasoned that "[t]his conclusion is consistent with the rule that every presumption is to be indulged in favor of jurisdiction . . . is consistent with the judicial policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court . . . by allowing the litigant, if possible, to amend the complaint to correct the defect . . . ." (Citations omitted; internal quotation marks omitted.) Id. That same presumption in favor of jurisdiction applies equally to habeas courts. See, e.g., *Stafford* v. *Commissioner of Correction*, 207 Conn. App. 85, 94, 261 A.3d 791 (2021) (it is well established that, in determining whether court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged).

In the present case, the petitioner alleges a violation of the ex post facto clause, arguing that the 2016 administrative directive creates a genuine risk that he will be incarcerated longer than he would have been under the 2013 administrative directive. His failure to demonstrate that the administrative directive is a "law" within the meaning of the ex post facto clause simply means that he has not stated a claim upon which relief can be granted. It does not alter the fact that habeas courts have subject matter jurisdiction to adjudicate ex post facto claims in which a petitioner asserts that punish-

ment for the offense he committed has increased as a result of a subsequent change in the law.

Because the ex post facto clause applies only to laws and the 2016 administrative directive is not a law within the meaning of the clause, the petitioner's claim is legally insufficient. Accordingly, the habeas court improperly failed to grant the motion to dismiss on the ground that the petition failed, pursuant to Practice Book § 23-29 (2), to state a claim upon which habeas corpus relief could be granted.[8]

The judgment is reversed and the case is remanded with direction to render judgment denying the petitioner's motion for summary judgment and granting the respondent's motion to dismiss for failure to state a claim upon which relief may be granted.

In this opinion the other judges concurred.

[1] Although the legislature has amended § 18-98e since the administrative directive at issue took effect in 2016; see Public Acts 2018, No. 18-155, § 3; that amendment is not relevant to this appeal. We therefore refer in this opinion to the current revision of § 18-98e.

[2] At the September 29, 2022 hearing on the motion for summary judgment and motion to dismiss, the petitioner withdrew the second claim in his petition, which challenged the calculation of his parole eligibility date by the Board of Pardons and Paroles.

[3] The constitution of the United States, article one, § 9, prohibits Congress from passing ex post facto laws. "So much importance did the [C]onvention attach to [the ex post facto prohibition], that it is found twice in the Constitution." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 195 n.9, 842 A.2d 567 (2004), quoting *Weaver* v. *Graham*, supra, 450 U.S. 28 n.8.

[4] General Statutes § 18-98e (b) provides that "[a]n inmate may earn risk reduction credit for adherence to the inmate's offender accountability plan, for participation in eligible programs and activities, and for good conduct and obedience to institutional rules as designated by the commissioner, provided (1) good conduct and obedience to institutional rules alone shall not entitle an inmate to such credit, and (2) the commissioner or the commissioner's designee may, in his or her discretion, cause the loss of all or any portion of such earned risk reduction credit for any act of misconduct or insubordination or refusal to conform to recommended programs or activities or institutional rules occurring at any time during the service of the sentence or for other good cause. If an inmate has not earned sufficient risk reduction credit at the time the commissioner or the commissioner's designee orders the loss of all or a portion of earned credit, such loss shall be deducted from any credit earned by such inmate in the future."

[5] In *Breton* v. *Commissioner of Correction*, 330 Conn. 462, 196 A.3d 789 (2018), our Supreme Court agreed with the claim of the petitioner in that case that the retroactive application to him of a 2013 amendment to General Statutes (Rev. to 2013) § 54-125a violated the ex post facto clause. That amendment eliminated, by virtue of his status as a violent offender, the RREC awarded to him pursuant to § 18-98e from the calculation of his initial parole eligibility date, thereby requiring him to complete 85 percent of his definite sentence before becoming parole eligible. The court reasoned that " 'it is unconstitutional to apply a statute that alters, to the defendant's disadvantage, the terms under which eligibility for [parole] is calculated, if that statute was enacted after the date of the underlying offense' "; id., 473; and further stated that "it cannot reasonably be argued that the 2013 amendment to General Statutes (Rev. to 2013) § 54-125a (b) (2) does not alter the calculation of when [the petitioner] is eligible for parole . . . . It clearly does so by eliminating risk reduction credit from that calculation. Indeed, the petitioner has consistently earned the maximum number of risk reduction credits that were available to him, and the respondent has provided no reason to believe either that the petitioner will be denied risk reduction credit in the future or that any credit that he earns or already has earned is likely to be revoked. In such circumstances, it strikes us as quite speculative to conclude that the petitioner's release date will not be adversely

affected by retroactively applying the 2013 amendment to him." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id., 478.

*Breton* is not applicable to the present case. First, *Breton* involved a statute governing parole eligibility, which pursuant to "firmly established" precedent is "part of the law annexed to the crime for ex post facto clause purposes." (Internal quotation marks omitted.) Id., 472. The present case, however, involves an administrative directive that does not satisfy the preliminary hurdle of being subject to the ex post facto clause prohibition because it does not constitute a law within the meaning of that clause. Second, in *Breton*, the 2013 statutory amendment undisputedly was being applied retroactively to the petitioner, and our Supreme Court reasoned that such retroactive application presented a significant risk that the petitioner's parole eligibility date would be adversely affected. In the present case, however, the 2016 administrative directive does not revoke any RREC credits that the petitioner already had earned pursuant to the 2013 administrative directive and, as a result, the effect of the 2016 administrative directive on the ultimate length of the petitioner's sentence is less clear than the effect of the statutory amendment on the parole eligibility date of the petitioner in *Breton*. In any event, we do not address the issue of whether the application of the 2016 administrative directive to the petitioner in the present case created a significant risk of increasing the measure of punishment because the preliminary hurdle that the administrative directive constitutes a law within the meaning of the ex post facto clause has not been satisfied.

[6] The constitution of the United States, article one, § 10, provides in relevant part: "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ."

[7] In *Pierce* v. *Lantz*, 113 Conn. App. 98, 965 A.2d 576, cert. denied, 293 Conn. 915, 979 A.2d 490 (2009), this court observed that "[a]dministrative directives are created for the internal management of the correctional institutions and are not regulations that are subject to the UAPA requirements." Id., 104–105.

[8] Additionally, because we conclude that the 2016 administrative directive does not constitute a law within the meaning of the ex post facto clause, we need not address the respondent's additional claims that that directive did not violate the ex post facto clause because it was not applied retroactively, and, furthermore, it did not create a sufficient risk of increasing the petitioner's measure of punishment. See, e.g., *State* v. *Banks*, supra, 321 Conn. 846 n.10.